**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No.** 25-mc-00121-NYW

**UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,**

    *Petitioners-Issuing Parties,*

**v.**

**EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL SERVICES, LLC,**

    *Respondents- Subpoenaed Parties.*

---

*Subpoena relates to: In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation, Case No. 3:23-md-03084-CRB, MDL No. 3084, pending in the U.S. District Court for the Northern District of California before Hon. Charles R. Breyer*

---

**PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES.................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    Multidistrict Litigation Centralization ............................................................................. 2

    Fraudulent Receipts Created by Respondents' Service Used in MDL ...................................... 4

    Respondents Refuse to Substantially Comply with Petitioners' Subpoena .............................. 8

ARGUMENT .......................................................................................................................... 13

    I.    THE COURT SHOULD TRANSFER THIS SUBPOENA ENFORCEMENT

            PROCEEDING TO THE MDL COURT UNDER RULE 45(F). ................................ 14

      A.    The MDL Litigation Will Be Disrupted if the Subpoena Dispute is Not Transferred. . 15

      B.    Respondents Will Not Suffer Undue Burden or Cost if the Subpoena Dispute is

             Transferred. ............................................................................................... 18

      C.    The MDL Court is in the Best Position to Decide this Subpoena Dispute................. 20

      D.    Respondents Agreed to Submit Any Subpoena Dispute to the MDL Court. .............. 22

    II.    IN THE ALTERNATIVE, THE COURT SHOULD ORDER RESPONDENTS TO

            COMPLY WITH THE SUBPOENAS. ........................................................................ 23

      A.    The Discovery Petitioners Seek is Highly Relevant to the Underlying Litigation in the

             MDL. ....................................................................................................... 24

      B.    The Discovery Petitioners Seek is Reasonable in Scope. ...................................... 28

C.    Respondents Have Not Articulated any Undue Burden from Complying with the

Discovery Petitioners Seek. ........................................................................29

D.    Respondents Failed to Timely Object to Petitioners' Subpoenas. ...........................33

CONCLUSION....................................................................................................... 36

**Cases**

*In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 3:23-md-03084-CRB, MDL No. 3084 ................................................................................................. *passim*

*Amica Mut. Ins. Co. v. Whois Priv. Prot. Serv., Inc.*, 2012 WL 1657728 (D. Colo. May 11, 2012) .................................................................................................................. 34, 36

*Atherton v. Amazon.com, Inc.*, 2022 WL 974250 (D. Colo. March 31, 2022) ........................ 15, 19

*Athletics Inv. Grp., LLC v. Schnitzer Steel Indus., Inc.*, 2024 WL 2191007 (N.D. Cal. May 14, 2024) ........................................................................................................................... 27

*Atkinson v. Atchison, Topeka & Santa Fe Ry. Co.*, 197 F.2d 244 (10th Cir. 1952) ........................ 24

*Axon Enter. Inc. v. Venjuris PC*, 2023 WL 1796436 (M.D. Fla. Feb. 7, 2023) ............................ 34

*Barker v. Insight Global, LLC*, 2019 WL 1974899 (N.D. Cal. May 3, 2019) .............................. 27

*Bennett v. Galer*, 2023 WL 7109620 (M.D. Fla. Oct. 27, 2023) .............................................. 33-34

*Beverly v. Interior Elec. Inc. Nev.*, 2023 WL 355692 (9th Cir. Jan. 23, 2023) ............................ 27

*Bodyguard Prods., Inc. v. Doe 1*, 2018 WL 8489600 (D. Haw. Nov. 19, 2018) ..................... 32-33

*Brown v. Deputy No. 1*, 2014 WL 842946 (S.D. Cal. Mar. 4, 2014) .......................................... 26

*Chevron Corp. v. Donzinger*, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .............................. 33

*Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 2135217 (D. Colo. May 25, 2010) ............. 34

*Chikhakli v. Samuels*, 2017 WL 9988971 (W.D. Okla. Apr. 17, 2017) ........................................ 27

*Cont'l Cas. Co. v. Multiservice Corp.*, 2008 WL 73345 (D. Kan. Jan. 7, 2008) .......................... 28

*Copeland v. C.A.A.I.R., Inc.*, 2024 WL 841215 (N.D. Okla. Feb. 28, 2024) ................................ 34

*CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 2017 WL 9690400 (N.D. Iowa July 19, 2017)....

.................................................................................................................30

*de Leon v. Clorox Co.*, 2020 WL 4584204 (N.D. Cal. Aug. 10, 2020) .........................................27

*Del Sol v. Whiting*, 2015 WL 12090268 (D. Ariz. Mar. 10, 2015)................................................27

*In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998) ........................................................ 34-35

*In re Disposable Contact Lens Antitrust Litigation*, 306 F. Supp. 3d 372 (D.D.C. 2017)................

..................................................................................................... 14-18, 21-22

*Edwards v. Dwyer*, 2012 WL 75335 (E.D. Mo. Jan. 10, 2012) ...................................................27

*Erickson v. Builder Advisor Grp. LLC*, 2022 WL 3109587 (N.D. Cal. July 6, 2022) ..................34

*Estes v. 3M Co.*, 2020 WL 8254487 (M.D. Ala. Dec. 29, 2020) ..................................................17

*Fed. Deposit Ins. Corp. v. Amos*, 2017 WL 11682626 (N.D. Fla. May 16, 2017)................... 34-35

*In re FirstEnergy Corp. Secs. Litig.*, 2023 WL 7319413 (S.D. Ohio Nov. 6, 2023).....................27

*First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241 (N.D. Ill. 2011) ......................................33

*Fit Tea LLC v. Alani Nutrition LLC*, 2023 WL 2351657 (M.D. Fla. Mar. 3, 2023).......................34

*In re Fosamax Prods. Liab. Litig.*, MDL No. 1789, 2009 WL 10711650 (U.S. Jud. Pan. Mult. Lit.

June 9, 2009) ........................................................................................................18

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 9065791 (S.D.N.Y.

May 8, 2020) ........................................................................................................17

*Intel Corp. v. Prot. Cap. LLC*, 2013 WL 12313348 (S.D. Cal. Oct. 2, 2013)...............................27

*Leviton Mfg. Co. v. Nicor, Inc.*, 2006 WL 1305036 (D.N.M. Jan. 6, 2006)..................................27

*Lifetime Prods., Inc. v. Correll, Inc.*, 2004 WL 6034623 (D. Utah Mar. 24, 2004)......................27

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672 (N.D. Cal. Feb. 10, 2021) ...........................................32

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012).....................................32

*Manufacturers Alliance Ins. Co. v. Baker*, 2025 WL 951617 (W.D. Okla. Mar. 28, 2025)...........27

*Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001) ..................................23

*Masters v. Gilmore*, 2009 WL 4016003 (D. Colo. Nov. 17, 2009) ..........................................23, 29

*McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381 (C.D. Cal. 2002).................................................35

*McGillvary v. Riez*, 2025 WL 2962775 (D.N.J. Oct. 17, 2025) ......................................26

*Melikhov v. Drab*, 2019 WL 5176911 (M.D. Fla. July 1, 2019) ......................................27

*MG Premium Ltd. v. Does 1-20*, 2023 WL 4681379 (C.D. Cal. July 7, 2023) .............................32

*Mylan, Inc. v. Analysis Grp., Inc.*, 2018 WL 1904183 (D. Mass. Apr. 20, 2018) ...................17, 21

*Nasufi v. King Cable, Inc.*, 2017 WL 3334110 (N.D. Tex. Aug. 4, 2017) .....................................34

*In re Nat'l Prescription Opiate Litig.*, 2023 WL 5659047, at *2 (W.D. Tex. Aug. 30, 2023)

................................................................................................................ 16-17, 21

*In re Niaspan Antitrust Litig.*, 2015 WL 3407543 (D. Md. May 26, 2015)............................17, 21

*Obodai v. Indeed, Inc.*, 2013 WL 1191267 (N.D. Cal. Mar. 21, 2013)..........................................33

*In re: Online DVD Rental Antitrust Litig.*, 744 F. Supp. 2d 1378 (U.S. Jud. Pan. Mult. Lit. 2010)

..................................................................................................................................18

*Parker v. N. W.*, 2025 WL 565817 (E.D. Cal. Feb. 19, 2025).....................................................34

*Partex Apparel Int'l LTDA S.A. de C.V. v. GFSI, Inc.*, 2012 WL 1059854 (D. Kan. Mar. 28, 2012)

..................................................................................................................... 27-28

*Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754 (10th Cir. 2020)........................................24

*In re Pork Antitrust Litig.*, 2022 WL 1156726 (S.D. Ind. Apr. 19, 2022) ...............................17, 19

*Poturich v. Allstate Ins. Co.*, 2015 WL 12766048 (C.D. Cal. Aug. 11, 2015) ...............................35

*Saewitz v. Lexington Ins. Co.*, 2006 WL 8433179 (S.D. Fla. Apr. 10, 2006)................................27

*Satcom Sol. & Res. LLC v. Pope*, 2020 WL 4511773 (D. Colo. Apr. 20, 2020)...........................32

*Schell v. Amendia, Inc.*, 2021 WL 1541712 (D. Colo. Apr. 20, 2021).................................... 14-15

*Schoonmaker v. City of Eureka*, 2018 WL 5829851 (N.D. Cal. Nov. 7, 2018) ............................34

*Simpson v. Jones*, 316 F. App'x 807 (10th Cir. 2009).................................................................27

*In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 2024 WL 3225909

 (N.D. Cal. June 28, 2024) ..............................................................................................27

*Stephenson v. Taser Int'l, Inc.*, 2023 WL 1816866 (M.D. Fla. Feb. 8, 2023)...............................34

*In re Subpoenas Duces Tecum Issued by U.S. Dist. Ct. for Dist. of New Mexico*, 2006 WL

 8443319 (D.N.M. Nov. 3, 2006).....................................................................................34

*In re Syngenta AG MIR162 Corn Litig. v. Syngenta AG*, 2020 WL 5988498 (D. Minn. Oct. 9,

 2020) ..........................................................................................................................17, 21

*Syngenta Crop Prot. LLC v. Dorsey*, 2023 WL 6209686, at *2 (W.D.N.Y. Sept. 25, 2023) ............

 ......................................................................................................... 16, 18-19, 21

*Traut v. Quantum Servicing, LLC*, 2018 WL 1035134 (N.D. Tex. Feb. 23, 2018) ......................34

*United Auto. Ins. Co. v. Stucki & Rencher, LLC*, 2021 WL 2174373 (D. Utah Feb. 8, 2021).......27

*United States v. 3M Co.*, 2020 WL 6587052 (S.D. Miss. Nov. 10, 2020) ..............................17, 21

*United States v. Fletcher*, 2015 WL 1607980 (W.D. Okla. Apr. 8, 2015)....................................27

*Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, 2017 WL 1611915 (W.D. Tex.

 Apr. 27, 2017) ...................................................................................................17, 19, 21

*Wagner v. Mastiffs*, 2012 WL 5948325 (S.D. Ohio Nov. 28, 2012) .............................................27

*Weddle v. Williams*, 2019 WL 1620815 (D. Colo. Apr. 15, 2019) ...............................................15

*Wells v. Pikes Peak Acura, Ltd.*, 2007 WL 24720621 (D. Colo. Aug. 28, 2007)..........................24

*In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2020 WL 12761382 (U.S. Jud. Pan.
  Mult. Lit. Dec. 15, 2020) ................................................................................18

*In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2021 WL 5848067 (U.S. Jud. Pan.
  Mult. Lit. Dec. 3, 2021) ................................................................................18

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) ..........................................32

**Statutes and Rules**

18 U.S.C. § 2510................................................................................................31

18 U.S.C. § 2702........................................................................................... 31-32

18 U.S.C. § 2711........................................................................................... 31-32

Federal Rule of Civil Procedure 45 ....................................2, 3, 14, 17-19, 21-23, 33-36

Federal Rule of Civil Procedure 26 ................................................................23

**Other Sources**

Jonathan Stempel, *Uber Says Some Sexual Assault Accusers Submitted Fake Receipts*, Reuters,
  Jul. 31, 2025, https://www.reuters.com/sustainability/boards-policy-regulation/uber-says-
  some-sexual-assault-accusers-submitted-fake-receipts-2025-07-31/ ................................5

# INTRODUCTION

This miscellaneous action concerns the enforcement of document subpoenas to a Colorado business and its owner and whether that enforcement should be ruled on by this Court or the issuing court, a large and complex multidistrict litigation pending in the U.S. District Court for the Northern District of California.[1]

Respondents Express Digital Services, LLC and Shawn Graft[2] d/b/a Express Digital Services, LLC operate several websites and smartphone apps that allow free and paid users to create their own fake receipts that closely mimic real receipts from real companies, using pre-set receipt templates that Respondents provide. In the underlying MDL litigation, the Court has found that numerous MDL Plaintiffs who allege they were harassed or assaulted by independent drivers on the Uber platform have submitted fraudulent Uber ride receipts.[3] The MDL court is actively addressing these issues and has found the fraudulent receipts include some created on websites like one of Respondents' websites, Makereceipt.com. The MDL Defendants, Petitioners in this action, Uber Technologies, Inc., Raiser, LLC, and Raiser-CA, LLC, issued these subpoenas to Respondents to provide discoverable information to help uncover the identities of individuals who used Respondents' websites and apps to create fraudulent Uber ride receipts, but Respondents have offered only partial, and incomplete, compliance.

---

[1] *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 3:23-md-03084-CRB, MDL No. 3084. Citations to the MDL are referred to as "Uber MDL."

[2] Although the corporate filings for Express identify Justin Taster as its registered agent and only officer, Defendants discovered that Justin Taster is not a real person. *See* ECF 3604 at n.2.

[3] *See* Uber MDL, Dkt. No. 3876, at 1.

Petitioners ask this Court to transfer this subpoena enforcement proceeding to the MDL court under Federal Rule of Civil Procedure 45(f) because the MDL court is deeply familiar with the complex litigation and is actively addressing the issues implicated by the subpoenas. In addition, the MDL court has expressly held that it is ready, willing, and able to accept enforcement proceedings transferred from other Courts so that the MDL Court can adjudicate any dispute. Transfer would not impose any burden on Respondents as the MDL court has said it will hold hearings by Zoom to avoid the burden to non-parties challenging subpoenas. In the alternative, this Court should compel Respondents to fully comply with the subpoenas because they seek highly relevant documents, are reasonable in scope, and would not impose an undue burden on Respondents.

## **BACKGROUND**

### **Multidistrict Litigation Centralization**

In late 2023, the U.S. Judicial Panel on Multidistrict Litigation (JPML) created the centralized multidistrict litigation proceeding (MDL) *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, assigning it to Judge Charles R. Breyer of the U.S. District Court for the Northern District of California.[4]  Judge Breyer referred all discovery matters in the MDL to Magistrate Judge Lisa J. Cisneros.[5]  Plaintiffs in the MDL allege that each of them was assaulted or harassed by an independent driver on the Uber platform and contend that Uber is responsible,

---

[4] Uber MDL, Dkt. No. 1 (Oct. 4, 2023).
[5] Uber MDL, Dkt. No. 66 (Nov. 3, 2023).

under a variety of legal theories, for having not implemented different or additional safety measures.[6]

The pre-trial litigation in the MDL has been extraordinarily complex. In addition to disputes over complex and novel legal issues under the various state laws applicable to the thousands of Plaintiffs' claims, the MDL Defendants (Petitioners) have produced over 5.5 million pages of documents in discovery and the parties have presented dozens of discovery disputes to the Court for resolution, including on the enforcement of subpoenas to non-parties.[7]

When addressing disputes over subpoenas served by MDL Plaintiffs to numerous non-parties, Judge Cisneros recognized, consistent with Rule 45,[8] that the MDL court has jurisdiction to resolve document subpoenas to non-parties with compliance due outside the Northern District of California when the responding party consents, when the JPML transfers the subpoena enforcement proceeding to the MDL, or when the district where compliance is required transfers the enforcement proceeding to the MDL under Rule 45(f). *See* Uber MDL, Dkt. No. 752, 2024 WL 3559730 at *1 (N.D. Cal. July 27, 2024) (Exhibit A). But the MDL court invited other courts hearing subpoena enforcement motions to transfer them to the MDL, "find[ing] … that the transfer of subpoena-related motions to this Court will serve the goals of justice, judicial economy, and efficiency in this MDL" and noting that such disputes "will be heard using Zoom to minimize the

---

[6] *See, e.g.*, Uber MDL, Dkt. No. 384 at 15 (Apr. 1, 2024).
[7] *See, e.g.* Uber MDL, Dkt. No. 1044 (Aug. 15, 2024); No. 1792 (Oct. 24, 2024); No. 4369 at 2 (Nov. 12, 2025).
[8] *See* Fed. R. Civ. P. 45(d)(1), (d)(2)(b)(i), (d)(3)(A)-(B), (f) ("the court for the district where compliance is required" decides subpoena enforcement disputes).

expense and burden on nonparties." *Id.* Judge Cisneros explained that transfer would serve the interests of justice and efficiency:

> If subpoena-related discovery disputes are heard in multiple districts across the country, that will require multiple judges to get up to speed on the nature of the case. Spreading the work will also increase the risk of inconsistent results. … The purpose the MDLs advance—just, as well as efficient, pretrial proceedings—will also be served by considering nonparties' interests in protecting themselves from undue burden and the disclosure of privileged material. … In light of these considerations, the Court finds that transferring such subpoena-related motions to this Court will significantly promote the just and efficient conduct of the actions that have been consolidated in this MDL.

*Id.* at *2. Both before and after this ruling, many disputes related to non-party subpoenas have been presented to the MDL court and resolved by Judge Cisneros. *See* Uber MDL, Dkt. Nos. 570, 598, 599, 604, 609, 610, 611, 612, 613, 621, 632, 633, 634, 635, 645, 654, 655, 671, 695, 772, 774, 1047, 1530, 1549, 1555, 1619, 1760, 1771, 1776, 1779, 1792, 1794, 1797, 1798, 1814, 1892, 1893, 1905, 3243, 4292 (May 29, June 7, 11, 14, 18, 21, July 14, Aug. 2, 5, 15, 29, 30, Sep. 6, Oct. 16, 17, 18, 22, 24, 25, 31, Nov. 19, 26, 2024, Jun. 12, Nov. 3, 2025).

### Fraudulent Receipts Created by Respondents' Service Used in MDL

To facilitate case-specific discovery for the thousands of cases in the MDL, the MDL court established a standard set of case-specific discovery each party must produce. Each MDL Plaintiff is required to provide a "bona fide ride receipt" and other information and authorizations in a

Plaintiff Fact Sheet (PFS). *See* Uber MDL Dkt. No. 175 at 2-3 (Dec. 28, 2023); Dkt. 348 at 3-4 (Mar. 19, 2024).

Unfortunately, the PFS process has been plagued with fraud.[9] The MDL Court has already found that more than 30 Plaintiffs have submitted fraudulent "non-bona fide receipts" in their PFS submissions. *See* Uber MDL, Dkt. No. 3876 (Sep. 9, 2025) (show cause order; granting motion at Dkt. 3604) ("The 21 Plaintiffs … have submitted non-bona-fide receipts"); Dkt. 3972 (Sep. 22, 2025) (show cause order; granting motion at Dkt. 3784) ("The 6 Plaintiffs … have submitted non-bona fide receipts"); Dkt. No. 4294 (Nov. 3, 2025) (motion for show cause order and limited deposition regarding fraudulent receipts); Dkt. 4440 (Nov. 19, 2025) (show cause order; granting motion at Dkt. 4137) ("The 7 Plaintiffs … have submitted non-bona fide receipts"); Dkt. 4456 (Nov. 21, 2025) (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Dkt. No. 4569 (Dec. 5, 2025) (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts) Dkt. No. 4575 (Dec. 5, 2025) (same).[10] Motion practice related to fraudulent ride receipts is ongoing and pending before the MDL court, and Uber is also preparing a fourth Fraudulent Receipts Motion that will demonstrate that additional MDL Plaintiffs have submitted non-bona fide receipts in the litigation.

---

[9] *See* Jonathan Stempel, *Uber Says Some Sexual Assault Accusers Submitted Fake Receipts*, Reuters, Jul. 31, 2025, https://www.reuters.com/sustainability/boards-policy-regulation/uber-says-some-sexual-assault-accusers-submitted-fake-receipts-2025-07-31/ (covering dispute over fraudulent ride receipts in Uber MDL).

[10] Uber MDL, Dkt. Nos. 3604, 3784, 3876, 3972, 4137, 4294, 4440, 4456, 4569, and 4575 are attached as Exhibit B.

As the MDL court explained, some of the fraudulent "non-bona fide receipts" were altered versions of real Uber ride receipts, while others were fraudulently generated using apps or websites designed to create receipts:

> The 21 Plaintiffs listed in Exhibit A have submitted non-bona-fide receipts. Some of these receipts show on their face that they were generated using websites designed for creating receipts, ***such as Makereceipt.com.*** Other of these receipts contain math errors, formatting inconsistencies, and other errors. Other receipts submitted by these Plaintiffs were altered from actual receipts.

Uber MDL, Dkt. No. 3876, at 1 (Exhibit B) (emphasis added). Below are images of two receipts submitted by MDL Plaintiffs, bearing watermarks from Makereceipt.com that read "FOR PRO OR ENTERPRISE MEMBERS ONLY":



| Uber MDL, Dkt. 3604-4 at 2. | Uber MDL, Dkt. 3604-3 at 2. |

Certain Plaintiffs subject to this show cause order were ordered to provide further discovery, including to produce "any documents and communications relating to the production of their ride receipts, the generation of their receipts, and/or **the website "Makereceipt.com.**" *Id.* at 2 (emphasis added).

**Respondents Refuse to Substantially Comply with Petitioners' Subpoena**

Makereceipt.com is one of Respondents' services—a service the MDL court found was used to create fraudulent Uber ride receipts submitted by Plaintiffs in the MDL. Uber MDL, Dkt. No. 3876 at 1 (Exhibit B). Respondents' services include ExpressExpense.com, ExpenseFast.com, Docdesk.co, InvoiceWriter.com, Make Receipt app, ExpressExpense app (collectively, "MakeReceipt"). MakeReceipt users can create receipts for free that bear a distinct watermark, or they can pay to create receipts without the watermark. *See* Uber MDL, Dkt. No. 3604 at 3-4. Respondents encourage users of their services to "Make Fake Receipts,"[11] while acknowledging the obvious risk of users making fake receipts "for fraudulent purposes" like returning items to retail stores,[12] but apparently do nothing to stop their services from being used for fraud. Respondents even have multiple templates on their website for creating fraudulent Uber ride receipts,[13] and an article posted after the Uber MDL was formed explaining that "Uber Receipt Generators are Useful for So Many Reasons."[14] *See* Shortnacy Decl. ¶¶ 10-14.

---

[11] *See* expensefast.com.

[12] *See* www.makereceipt.com/faq.php (recommending against making fake receipts for fraudulent purposes); *see also* https://expensefast.com/, stating on the front page of the website: "For entertainment, research and educational purposes ONLY, NOT intended for use for fraudulent purposes," demonstrating Respondents' knowledge that their services are routinely used for fraudulent purposes.

[13] https://makereceipt.com/receipt-templates/taxi/uber-receipt/ ("Uber Receipt Generator – Create & Customize Online"); *see also* https://makereceipt.com/receipt-templates/taxi/uber-receipt-2025-app.

[14] *See* https://expensefast.com/uber-receipt-generators-are-useful-for-so-many-reasons/.

| **"Uber Receipt Generator - Create & Customize Online"** |
| :---: |



https://makereceipt.com/receipt-templates/taxi/uber-receipt/ (Shortnacy Decl. ¶ 14.)

| **"Uber Receipt Generators are Useful for So Many Reasons"** |
| :---: |

https://expensefast.com/uber-receipt-generators-are-useful-for-so-many-reasons/ (Shortnacy Decl. ¶ 12.)

Multiple MDL Plaintiffs submitted receipts in support of their claims bearing the MakeReceipt watermark, and another MDL Plaintiff submitted a receipt without a watermark but that also bears indicia that it was generated using MakeReceipt. Uber MDL, Dkt. No. 3604 at 3-4. Because Respondents' paid receipts do not include the watermark and because users can easily remove watermarks with a variety of online tools, Petitioners reasonably expect that there are additional non-bona fide receipts generated by Plaintiffs using MakeReceipt and not yet detected by Petitioners.

Because of the significant fraud problem in MDL Plaintiffs' ride receipts, including fraudulent receipts created with Respondents' services, Petitioners served subpoenas on Respondents. *See* Exhibit C (subpoena to Express Digital Services, LLC); Exhibit D (subpoena to Shawn Graft d/b/a Express Digital Services, LLC); Exhibit E (amended subpoena to Express Digital Services, LLC). Mr. Graft was served on October 9, 2025, and an amended subpoena to Express Digital Services was served on October 17, 2025. *See* Shortnacy Decl. ¶¶ 5-7. The dates of compliance on each subpoena were 14 days after they were issued and served (October 7, October 23, and October 31, 2025, respectively). *See* Exhibit C; Exhibit D; Exhibit E.

The subpoenas requested identifying contact information and API data related to Uber ride receipts created by Respondents' services on their websites and smartphone apps:

- Documents identifying contact information for any persons that have used or accessed any website or smartphone application developed, maintained, or operated by Petitioners to generate an Uber ride receipt; and

- Documents containing API data related to or depicting any Uber ride receipts generated using any website or smartphone application developed, maintained, or operated by Petitioners.

*See id.* (requests summarized). At no point have Respondents served any written objections to Petitioners' subpoenas. *See* Shortnacy Decl. ¶ 25.

Following conferral, Respondents produced some data relating only to users of their paid services. But the data they produced was not sufficient to permit Petitioners to match MDL Plaintiffs with users of Respondents' applications or websites. For instance, Respondents produced email addresses used to create non-bona fide Uber ride receipts, which are not the same email addresses MDL Plaintiffs used to create their Uber accounts—and therefore are of no use in most instances in identifying MDL Plaintiffs who used Respondents' services to create fraudulent Uber ride receipts. *See* Shortnacy Decl. ¶ 19.

During conferral with Petitioners, Respondents acknowledged that they have withheld other identifying information. *See* Shortnacy Decl. ¶ 22. The information Respondents have not produced includes:

**Stripe IDs for users of Petitioners' paid services who created fraudulent Uber ride receipts:** Respondents confirmed that they have Stripe IDs for users of their paid services, which are unique alphanumeric identifiers associated with users who have paid for Respondents' services and created fraudulent Uber ride receipts. Stripe, a payment processor (*see* stripe.com), could use those IDs to identify those users (pursuant to a subpoena and court order, if necessary), but Respondents refuse to produce this information. *See* Shortnacy Decl. ¶¶ 21-23.

**Names and IP addresses for users of Respondents' free and paid services who created fraudulent Uber ride receipts:** Respondents have not provided names or IP addresses associated with users for its free and paid services. The terms of service on Respondents' websites state that, for certain services, users must provide their names and that Petitioners maintain those names, and Respondents' websites also state that Respondents "record[] information about how people access our web sites. This information includes your IP address (or the DNS name associated with it) and what web software you're using." *See* Terms and Conditions (Exhibit F[15]). Despite these statements, Respondents' counsel has said in conferrals that they do not have names and IP addresses for users of their free or paid services. Nevertheless, and curiously, Respondents have refused to provide declarations attesting to what their counsel has represented, even when confronted with the contrary language from Respondents' websites. *See* Shortnacy Decl. ¶¶ 8, 24.

Throughout the conferral between Petitioners and Respondents, Respondents' counsel repeatedly represented to Petitioners that Respondents consented to hearing the dispute before the MDL court: "If Uber wants to proceed before [MDL Magistrate] Judge Cisneros, we are happy to do that …." Exhibit G[16] at 1 (Nov. 21, 2025); *see also id.* at 1, 10-13 (Nov. 21, Dec. 1, 2025) ("If instead [of further conferral] you prefer to present the matter to [MDL Magistrate] Judge Cisneros, any hearing will need to be set ….") ("We will plan to seek those costs in front of [MDL Magistrate] Judge Cisneros if we cannot come to an agreement.") ("That's a very simple

---

[15] Available at https://makereceipt.com/terms-conditions.php; https://expressexpense.com/terms-conditions.php; https://expensefast.com/terms-and-conditions/; https://docdesk.co/terms-and-conditions/; https://invoicewriter.com/terms-conditions.php.
[16] *See* emails between Michael Shortnacy, Adam Shoshtari, and Jay Haider, counsel for Petitioners, and Kelly Twigger, counsel for Respondents dated Oct. 15-Dec. 8, 2025 (collected as Exhibit G).

relevance/proportionality argument that we can have with [MDL Magistrate] Judge Cisneros as needed.") ("We will seek to pursue my client's expenses directly with [MDL Magistrate] Judge Cisneros.").

In light of these statements, once the parties reached an impasse, Petitioner's counsel emailed Respondents' counsel on November 26, 2025 and stated that "Uber will exercise its rights under Pre Trial Order No 8 in the MDL ... ." *See id.* at 12. Then, on December 2, 2025, Petitioners' counsel emailed Respondents' counsel with Petitioners' portion of a joint letter brief on enforcing the subpoenas, pursuant to the discovery briefing procedure set out in MDL Pretrial Order No. 8 (PTO 8). *See id.* at 24-25; Uber MDL, Dkt. 323 (Mar. 1, 2024). About a week later, Respondents changed their position, stating for the first time that they had not actually consented to the MDL court's jurisdiction, but only engaged in "informal discussion" and made "references to a judge's name." Exhibit G at 17 (Dec. 8, 2025). As a result, Petitioners prepared and filed this motion in the U.S. District Court for the District of Colorado.

## <u>ARGUMENT</u>

This Court should transfer this subpoena enforcement miscellaneous action to the MDL court to rule on Petitioners' motion to compel compliance with the subpoenas served on Respondents. In the alternative, if the Court declines to transfer, it should grant Petitioners' motion to compel Respondents' compliance with the subpoenas to produce relevant and important discovery.

# I. THE COURT SHOULD TRANSFER THIS SUBPOENA ENFORCEMENT PROCEEDING TO THE MDL COURT UNDER RULE 45(F).

The Court should transfer this subpoena enforcement proceeding to the MDL court because, as numerous courts have held, the complexity of MDL proceedings constitutes an exceptional circumstance justifying transfer under Rule 45(f), transfer would not impose any meaningful burden on Respondents, and the MDL court is in the best position to decide the subpoena dispute.

When weighing transfer of a subpoena enforcement proceeding under Rule 45(f) to the issuing court, courts consider "avoiding burdens on local nonparties subject to subpoenas" and the need "to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Schell v. Amendia, Inc*., 2021 WL 1541712, at *3 (D. Colo. Apr. 20, 2021) (quoting Fed. R. Civ. P. 45, Advis. Comm. Notes, subsection (f)).

The opinion and order from *In re Disposable Contact Lens Antitrust Litigation*, by then-District Judge, now U.S. Supreme Court Justice, Ketanji Brown Jackson is instructive on how this analysis applies in the context of MDLs. *See* 306 F. Supp. 3d 372, 373-83 (D.D.C. 2017). As she explained, "[a]t bottom, the established considerations appear to relate to three overarching questions: (1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred; (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and (3) whether, based on various considerations, the issuing court

is in the best position to rule on the motion to compel." *Id.* at 376; *see also Atherton v. Amazon.com, Inc.*, 2022 WL 974250, at *1 (D. Colo. March 31, 2022); *Weddle v. Williams*, 2019 WL 1620815, at *3 (D. Colo. Apr. 15, 2019); *Schell*, 2021 WL 1541712, at *3. Here, all three factors weigh in favor of transfer to the MDL court.

**A.      The MDL Litigation Will Be Disrupted if the Subpoena Dispute is Not Transferred.**

The MDL court has been addressing discovery issues in this litigation for over two years, resolving dozens of discovery and other disputes, including issues related to fraudulent receipts generally and Makereceipt.com specifically. *See* Uber MDL, Dkt. 3604 at 9-11, 14, 20 (motion for show cause discussing fraudulent receipts from makereceipt.com); Dkt. 3876 at 1 (show cause order finding that certain plaintiffs "have submitted non-bona-fide receipts. Some of these receipts show on their face that they were generated using websites designed for creating receipts, such as Makereceipt.com") (Exhibit B); *see also* Dkt Nos. 3784 at 6, 3972, 4137 at 6-7, 4440 (Exhibit B). In a recent order, the MDL court ordered certain Plaintiffs  to provide further discovery, including to produce "any documents and communications relating to the production of their ride receipts, the generation of their receipts, and/or ***the website "Makereceipt.com.***" Dkt. 3876 at 2 (emphasis added).

Disputes over fraudulent "non bona fide receipts" are not going away in the MDL and are currently being litigated. *See, e.g.*, Uber MDL Dkt. No. 4294 (motion for show cause order and limited deposition regarding fraudulent receipts); Dkt. No. 4456 (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Dkt. No. 4569 (motion to compel compliance with court order regarding

discovery and depositions about fraudulent ride receipts); Dkt. No. 4575 (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts) (Exhibit B); *see also* Uber MDL Dkt. No. 4580 (Dec. 5, 2025) (motion regarding fraudulent PFS); Uber MDL Dkt. Nos. 4492, 4506-12, 4514-59, 4563-64, 4567, 4571, 4573-74, 4577-79, 4582-90 (Nov. 27, Dec. 3, 4, 5, 2025) (Plaintiffs' statements, briefs, and dismissals in response to show cause orders and motion to dismiss regarding PFS non-compliance and fraudulent ride receipts). Uber is about to file yet another motion for additional plaintiffs, and investigations continue in order to root out additional fraud; the Court has pending motions before it related to PFS compliance and fraudulent ride receipts. *See, e.g.*, Uber MDL, Dkt. 4580 (Dec. 5, 2025) (motion regarding fraudulent plaintiff fact sheets).

Failing to transfer would undermine the MDL court's ongoing and complex work in this area. As the MDL court itself explained, "[s]preading the work" of subpoena enforcement to different courts will "increase the risk of inconsistent results." Uber MDL, Dkt. No. 752, 2024 WL 3559730 at *1.

The MDL status of the underlying litigation increases the risk of disrupting the litigation and the harm of inconsistent rulings—as numerous courts have uniformly held.[17] "[T]he MDL

---

[17] *See, e.g.*, *Syngenta Crop Prot. LLC v. Dorsey*, 2023 WL 6209686, at *2 (W.D.N.Y. Sept. 25, 2023) (noting that many courts "have transferred similar motions because of 'the posture and complexity of the underlying rulings, ... to avoid unnecessary delay[,] ....' This is especially so in MDL cases. The fact that the issuing court is overseeing multidistrict litigation is typically considered an exceptional circumstance warranting transfer, since such litigation is by its nature typically complex. Numerous cases so hold."); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 5659047, at *2 (W.D. Tex. Aug. 30, 2023) ("This Court, like others, finds that the complex MDL status of the underlying litigation is an exceptional circumstance weighing strongly in favor of transfer 'because the same concerns about orderliness and disruption that led to the consolidation

---

status of the underlying litigation is surely an 'exceptional circumstance' that weighs strongly in favor of transfer to the Issuing Court under Rule 45(f), because the same concerns about orderliness and disruption that led to the consolidation of actions as an MDL in the first place arise with respect to pretrial disputes regarding subpoenas issued in the context of that complex litigation." *In re*

---

of actions as an MDL in the first place arise with respect to pretrial disputes regarding subpoenas issued in the context of that complex litigation.'"); *In re Pork Antitrust Litig.*, 2022 WL 1156726, at *2 (S.D. Ind. Apr. 19, 2022) (transferring under Rule 45(f) because "the MDL proceedings … would be significantly disrupted if the subpoena is adjudicated [by the issuing court]. Adjudicating the subpoena [by the issuing court] risks inconsistency in rulings and threatens the cohesiveness achieved by [MDL court] since the case was filed nearly four years ago."); *Estes v. 3M Co.*, 2020 WL 8254487, at *1 (M.D. Ala. Dec. 29, 2020), rep. and rec. adopted, 2021 WL 218729 (M.D. Ala. Jan. 21, 2021) (finding "that the judicial interest in avoiding disruption of the pending MDL outweighs any stated interest in resolving the motion to quash locally."); *United States v. 3M Co.*, 2020 WL 6587052, at *3 (S.D. Miss. Nov. 10, 2020) ("the underlying litigation … is complex multidistrict litigation … [and with bellwether] trials on the horizon, the Court would also risk upending the smooth litigation process in the" MDL court (citations omitted)); *In re Syngenta AG MIR162 Corn Litig. v. Syngenta AG*, 2020 WL 5988498, at *4 (D. Minn. Oct. 9, 2020) ("This dispute does not arise from a run-of-the-mill lawsuit, but an exceptional one. The [] case is part of a complex, years-long MDL action comprised of hundreds of federal lawsuits. The assigned MDL judges are tasked with globally managing discovery for thousands of related state court actions. It seems implausible that this court could identify and give proper weight to the implications [the subpoena enforcement] motion may have on the MDL Court's management of its cases. This fact alone arguably is enough to justify transfer."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 9065791, at *1 (S.D.N.Y. May 8, 2020) ("Courts have deemed the fact that a subpoena was issued in an MDL litigation to be "an 'exceptional circumstance' that weighs strongly in favor of transfer to" the court that issued the subpoena under Rule 45(f)."); *Mylan, Inc. v. Analysis Grp., Inc.*, 2018 WL 1904183, at *1 (D. Mass. Apr. 20, 2018) (transferring under Rule 45(f) "[i]n light of the complexity of the underlying [MDL litigation and] the risk of inconsistent orders if this Court was to rule on plaintiff's motion to compel"); *Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, 2017 WL 1611915, at *2 (W.D. Tex. Apr. 27, 2017) (transferring under Rule 45(f) because, among other reasons, the underlying litigation "is complicated multidistrict litigation" so the "[u]niformity of discovery rulings in a case of this complexity is critical to achieving fairness to the parties and non-parties"); *In re Niaspan Antitrust Litig.*, 2015 WL 3407543, at *1 (D. Md. May 26, 2015) ("where the underlying action is a multidistrict litigation, transfer may be warranted to avoid piecemeal rulings by different judges, reaching different conclusions, in resolving identical disputes").

*Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 378 (D.D.C. 2017) (Brown Jackson, J.).

Similarly, the JPML—the judicial panel tasked by statute with transferring cases to MDL proceedings—has repeatedly found that subpoena enforcement proceedings should be transferred to the MDL court for resolution. *See, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2021 WL 5848067, at *2-*3 (U.S. Jud. Pan. Mult. Lit. Dec. 3, 2021); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2020 WL 12761382, at *2 (U.S. Jud. Pan. Mult. Lit. Dec. 15, 2020); *In re: Online DVD Rental Antitrust Litig.*, 744 F. Supp. 2d 1378 (U.S. Jud. Pan. Mult. Lit. 2010); *In re Fosamax Prods. Liab. Litig.*, MDL No. 1789, 2009 WL 10711650, at *1 (U.S. Jud. Pan. Mult. Lit. June 9, 2009). As the JPML has explained, a  responding parties' "objections will require assessment of [the issuing party's] need for the discovery relative to the needs of the [MDL] litigation" and the MDL "court is well placed to resolve [a  responding party's] challenges to [a] subpoena given its extensive familiarity with the factual and legal issues in" the MDL, "something that … cannot easily be shared or coordinated with the court" where compliance is required. *In re Zantac*, 2021 WL 5848067, at *2.

**B.      Respondents Will Not Suffer Undue Burden or Cost if the Subpoena Dispute is Transferred.**

Weighing strongly in favor of transfer is the absence of any burden on Respondents from transfer. In the Rule 45(f) transfer burden analysis, "the focus is not on the burden that would be imposed on the nonparty by compliance with the subpoena, but on the nonparty's interest in having the motion to compel decided in his home district." *Syngenta Crop Prot.*, 2023 WL 6209686, at

*2. Here, there is no burden on Respondents by this dispute being adjudicated by the MDL court rather than this Court.

Rule 45(f) provides that, upon transfer of a subpoena enforcement proceeding to the issuing court, "if the attorney for [the responding party] is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court." So there would be no burden on Respondents to retain separate counsel admitted in the Northern District of California.

Nor would there be any burden of travel expenses associated with transfer. MDL Judge Cisneros invited courts to transfer subpoena disputes to the MDL court and said that hearings "will be heard using Zoom to minimize the expense and burden on nonparties." Uber MDL, Dkt. No. 752, 2024 WL 3559730 at *1 (N.D. Cal. July 27, 2024) (Exhibit A); Atherton, 2022 WL 974250, at *1 (emphasizing that any travel burden on subpoena recipient is mitigated because the issuing court "has shown flexibility in holding hearings telephonically"); In re Pork Antitrust Litig., 2022 WL 1156726, at *2 (finding that the responding party "faces minimal burden from its motion to quash being transferred to the [MDL]" where "[n]o travel will be required, as the MDL Court already … set a hearing on Plaintiffs' motion to compel via Zoom videoconference"). Nor is the expense of document production any different based on which court adjudicates the subpoena enforcement dispute. Visionworks of Am., 2017 WL 1611915, at *2 (transferring under Rule 45(f) because, among other reasons, the "place of compliance is of little moment in this instance").

### C. The MDL Court is in the Best Position to Decide this Subpoena Dispute.

The MDL court is also in the best position to decide this subpoena dispute. In addition to presiding over discovery that is enormous in scale and extensive motion practice over the past two years, it has addressed and continues to address disputes over the PFS procedure and non bona fide receipts, including fraudulent receipts created by Respondents' services in particular. The MDL court is in the best position to understand the relevance, importance, and proportionality of the discovery sought in the subpoenas to Respondents, as well as the undue burden balancing analysis.

An issuing court's familiarity with complex litigation generally, and the particular issues involved in a subpoena enforcement dispute specifically, are weighed heavily in determining whether the issuing court is in a better position to rule on a subpoena dispute—especially when the underlying litigation is an MDL. *See supra*, § I-A (citing MDL filings regarding Plaintiff fact sheets and fraudulent, non-bona fide Uber ride receipts). As the MDL court here explained, "[t]his Court has been actively managing discovery in this MDL for" two years at this point, addressed dispositive motion practice, and "has had ample time to understand the nature of Plaintiffs' claims. The purpose the MDLs advance—just, as well as efficient, pretrial proceedings—will also be served by considering nonparties' interests in protecting themselves from undue burden and the disclosure of privileged material. … In light of these considerations, the Court finds that transferring such subpoena-related motions to this Court will significantly promote the just and efficient conduct of the actions that have been consolidated in this MDL."  Uber MDL, Dkt. No. 752, 2024 WL 3559730 at *2.

As numerous courts have held, an issuing "MDL court is clearly in the best position to rule on [relevance and undue burden] objections in light of that court's familiarity with all related proceedings. That court is in the best position to determine whether this subpoena against [the responding party] should be enforced or not." *Syngenta Crop Prot. LLC*, 2023 WL 6209686, at *2.[18]

[18] *See also In re Nat'l Prescription Opiate Litig*., 2023 WL 5659047, at *3 (finding "that the [MDL court] is in the best position to make rulings on the scope of discovery and evaluate the relevance of the requested documents. … The issues presented in the [non-parties'] Motion to Quash likely have been or will be presented to the [MDL court] in other discovery motions"); *United States v. 3M Co.*, 2020 WL 6587052, at *3 (transferring under Rule 45(f), noting that the MDL "has been in front of [the MDL judge] for more than a year and a half, making considerations of judicial economy weigh in favor transferring the [subpoena enforcement] case back"); *In re Syngenta AG MIR162 Corn Litig.*, 2020 WL 5988498, at *5 ("Here, the underlying MDL is complex. … [The MDL] Magistrate [has] deep familiarity with these issues … [which] would benefit the parties in resolving this dispute. … [T]he MDL Court is better suited to balance relevance and necessity of discovery against the need to protect [the responding party], while at the same time giving due consideration to the years of discovery it has overseen under the Coordination Order."); *Mylan, Inc.* 2018 WL 1904183, at *1 (transferring under Rule 45(f) in "the interests of judicial economy" where the MDL court "already has before it more than ten outstanding motions to compel in that MDL matter raising similar types of issues"); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 381–82 ("[T]he MDL Panel [JPML] apparently believed that the Issuing Court is particularly qualified to manage and conduct the pretrial proceedings and discovery in this complicated" MDL and "[t]he subpoena dispute centers on several points of contention that implicate the underlying MDL and would benefit from the application of [the MDL district and magistrate judges'] expertise," such as relevance to the MDL claims and the interpretation and sufficiency of the MDL court's protective order); *Visionworks of Am., Inc.*, 2017 WL 1611915, at *2 ("[T]he presiding [MDL] judge … is in a much better position than this Court to determine how crucial the documents requested from [the responding party] are to [the MDL defendant'] defense in the MDL case, which is a significant part of the balancing analysis a court needs to conduct to decide [the responding party's] undue burden objection. Finally, the evaluation of the efficacy of the underlying court's confidentiality order in protecting [the responding party's] interests is best made by that court and not this one."); *In re Niaspan Antitrust Litig.*, 2015 WL 3407543, at *1 (transferring under Rule 45(f) to MDL court, noting that "familiarity with the underlying action … is a compelling factor in 'highly complex' cases where the issuing court is aware of 'the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation.'").

Unlike courts that approach the underlying action cold, with "limited exposure to and understanding" of it, "judges who are presiding over [an] MDL are already 'knee-deep in the nuances of the underlying litigation,' and thus are clearly 'in a much better position … to evaluate relevance,'" and other issues implicated by a subpoena dispute. *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 381–82.

**D.    Respondents Agreed to Submit Any Subpoena Dispute to the MDL Court.**

While the Court need not address the issue because there are exceptional circumstances justifying transfer under Rule 45(f), Respondents' previous agreement to submit any subpoena dispute to the MDL court weighs in favor of transfer.

Respondents repeatedly represented to Petitioners that they consented to presenting this subpoena dispute to the MDL court. During the conferral, Petitioners' counsel suggested to Respondents' counsel that the potential dispute be presented to the MDL court: "If we cannot reach agreement, we are prepared to go to the MDL Court. The Court has heard several subpoena disputes, as the docket reflects; and typically does so promptly." Exhibit G at 1 (Nov. 20, 2025). In response, Respondents' counsel said unambiguously, ***"If Uber wants to proceed before [MDL Magistrate] Judge Cisneros, we are happy to do that …."*** Exhibit G at 1 (Nov. 21, 2025). Thereafter, Respondents' counsel made repeated references to submitting the dispute to the MDL court. *See id.* at 1, 10-13 (Nov. 21, Dec. 1, 2025). Respondents' last-minute change of position, on the eve of filing, substantially prejudiced Petitioners, who relied on the representation to brief the dispute pursuant to the MDL court's procedures and did not begin subpoena enforcement

proceedings before this Court, as they would have at an earlier date but for Respondents' representations.

Respondents' unambiguous statements, and strategic last-minute about face, weigh strongly in favor of transfer. *Cf. Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477 (5th Cir. 2001) (holding that representation by counsel to opposing counsel was a binding judicial admission).

## II.     IN THE ALTERNATIVE, THE COURT SHOULD ORDER RESPONDENTS TO COMPLY WITH THE SUBPOENAS.

If the Court does not transfer this subpoena enforcement proceeding to the MDL court, it should order Respondents to comply with the subpoenas in full because the discovery sought is highly relevant, reasonable in scope, and would not impose an undue burden on Respondents.

Discovery from non-parties under Rule 45 is governed by the scope of discovery applicable to non-parties in Rule 26(b)(1). *See Masters v. Gilmore*, 2009 WL 4016003, at *2 (D. Colo. Nov. 17, 2009). "Relevancy under Rule 26 is extremely broad." *Id.* An objecting party bears the burden of showing the discovery sought is irrelevant or burdensome, and "cannot sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing.'" *Id.* "The fact that discovery is sought from a non-party is one factor the Court may weigh in determining whether [a party] is entitled to enforcement of the subpoena. Courts are required to balance the need for discovery against the burden imposed when parties are ordered to produce information or materials, and the status of a person or entity as a non-party is a factor which weighs against disclosure." *Id.* (citation omitted).

### A. The Discovery Petitioners Seek is Highly Relevant to the Underlying Litigation in the MDL.

There is no serious dispute that the outstanding discovery—Stripe IDs for users of Respondents' paid services who used the services to create fraudulent Uber ride receipts, and names and IP addresses for users of Respondents' paid and free services who used the services to create fraudulent Uber ride receipts—are relevant. Evidence of fraud and forgery is relevant to the credibility and authenticity of Plaintiffs and the documents submitted by Plaintiffs. *See Wells v. Pikes Peak Acura, Ltd.*, 2007 WL 2472062, at *1 (D. Colo. Aug. 28, 2007) (granting motion to compel, finding discovery request for "all customer files … of financed customer deals at" car dealership relevant to alleged "falsifications, and inside notes directing the consumer fraud," "relevant concerning the practices that took place at the Defendant dealership and … relevant on the issue of impeachment," and were not unduly burdensome because "the privacy interests of the customer personal information contained these customer files can be protected by a protective order and by limiting" contact with customers); *cf. Peterson v. XPO Logistics, Inc*., 812 F. App'x 754, 755-60 (10th Cir. 2020) (holding that documents relevant to alleged forgery of emails were not protected from discovery by judicial proceeding privilege); *Atkinson v. Atchison, Topeka & Santa Fe Ry. Co*., 197 F.2d 244, 246 (10th Cir. 1952) ("The credibility of the witness is always relevant in the search for truth.").

Moreover, the MDL court has already recognized the relevance of fraudulent ride receipts submitted by MDL Plaintiffs by granting several of Petitioners' (MDL Defendants') motions for order to show cause why certain Plaintiffs who submitted fraudulent "non-bona fide ride receipts" should not have their cases dismissed with prejudice. *See* Uber MDL, Dkt. No. 3876 (show cause

order; granting motion at Dkt. 3604); Dkt. 3972 (show cause order; granting motion at Dkt. 3784); Dkt. 4440 (show cause order; granting motion at Dkt. 4137); Dkt. 4456 (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Dkt. No. 4569 (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts); Dkt. No. 4569 (motion to compel compliance with court order regarding discovery and depositions about fraudulent ride receipts); Dkt. No. 4575 (same) (Exhibit B); *see also* Dkt. 4456 (Nov. 21, 2025) (motion to dismiss Plaintiffs who had not complied with PFS procedure and Plaintiffs subject to show cause orders for submitting non-bona fide receipts); Uber MDL Dkt. No. 4580 (Dec. 5, 2025) (motion regarding fraudulent PFS); Uber MDL Dkt. Nos. 4492, 4506-12, 4514-59, 4563-64, 4567, 4571, 4573-74, 4577-79, 4582-90 (Nov. 27, Dec. 3, 4, 5, 2025) (Plaintiffs' statements, briefs, and dismissals in response to show cause orders and motion to dismiss regarding PFS non-compliance and fraudulent ride receipts).

In fact, the MDL court in a show cause order specifically found that, of "[t]he 21 Plaintiffs [at issue in the motion who] submitted non-bona-fide receipt[,] [s]ome of these receipts show on their face that they were generated using websites designed for creating receipts, such as Makereceipt.com," and ordered further discovery of "any documents and communications relating to the production of their ride receipts, the generation of their receipts, and/or ***the website "Makereceipt.com.***" *See* Uber MDL, Dkt. No. 3876 at 1-2 (Exhibit B) (emphasis added).

The Stripe IDs for users of Respondents' paid services who created fraudulent Uber ride receipts are relevant to uncovering identities of additional MDL Plaintiffs who have submitted

fraudulent Uber ride receipts in the MDL. The Stripe IDs are unique identifiers that can be associated with identifying information through discovery from Stripe. Respondents do not dispute that they possess Stripe IDs for these paid users. The Court should order Respondents to produce all Stripe IDs for anyone who used Respondents' services to create Uber ride receipts.

Likewise, the names and IP addresses for users of Respondents' free and paid services to create fraudulent Uber ride receipts are also relevant. Respondents do not disagree. Rather, Respondents' objections are based on their counsel's informal representation that Respondents do not possess this information—despite the statements on Petitioners' website that they do maintain names and collect IP addresses. *See* Terms and Conditions (Exhibit F[19]). But when asked to sign a declaration attesting to their counsel's representation, Respondents balked, saying that a declaration is not required by the Federal Rules of Civil Procedure. *See* Exhibit G at 12 (Nov. 21, 2025).

Courts routinely order both parties and non-parties to submit declarations to support representations about discovery and compliance with subpoenas. *See Brown v. Deputy No. 1*, 2014 WL 842946, at *6 (S.D. Cal. Mar. 4, 2014) (requiring non-party subpoena recipient to produce version of video with audio or file a declaration stating that no audio version exists); *McGillvary v. Riez*, 2025 WL 2962775, at *12 (D.N.J. Oct. 17, 2025) ("If … [the non-party subpoena recipient] locates no additional responsive records … it shall file a sworn declaration from an official with knowledge that describes its diligent review of the relevant records consistent with this Order.");

---

[19] Available at https://makereceipt.com/terms-conditions.php; https://expressexpense.com/terms-conditions.php; https://expensefast.com/terms-and-conditions/; https://docdesk.co/terms-and-conditions/; https://invoicewriter.com/terms-conditions.php.

*Intel Corp. v. Prot. Cap. LLC*, 2013 WL 12313348, at *6 (S.D. Cal. Oct. 2, 2013) (requiring non-party subpoena recipient to file declaration describing search for documents and, "[i]f there are no responsive documents, an explanation …").[20]

Respondents' counsel's informal representations are not evidence, much less competent evidence, to show that they do not possess names and IP addresses of their users, especially in the face of evidence to the contrary on Respondents' websites. *See Simpson v. Jones*, 316 F. App'x 807, 811–12 (10th Cir. 2009) ("In the absence of other evidence, an unsworn allegation does not meet the evidentiary requirements of Fed.R.Civ.P. 56."); *United States v. Fletcher*, 2015 WL 1607980, at *2 (W.D. Okla. Apr. 8, 2015) (granting summary judgment because representations of being denied discovery were not supported by "affidavit or declaration to" support the representations); *Partex Apparel Int'l LTDA S.A. de C.V. v. GFSI, Inc.*, 2012 WL 1059854, at *9 (D. Kan. Mar. 28, 2012) ("[T]he court will not entertain a claim … that is based on nothing more

---

[20] *See also, e.g.*, *Manufacturers Alliance Ins. Co. v. Baker*, 2025 WL 951617, at *3 n.6 (W.D. Okla. Mar. 28, 2025) (non-party); *United Auto. Ins. Co. v. Stucki & Rencher, LLC*, 2021 WL 2174373, at *2 (D. Utah Feb. 8, 2021); *Chikhakli v. Samuels*, 2017 WL 9988971, at *5 (W.D. Okla. Apr. 17, 2017) (non-party); *Leviton Mfg. Co. v. Nicor, Inc.*, 2006 WL 1305036, at *3 (D.N.M. Jan. 6, 2006); *Lifetime Prods., Inc. v. Correll, Inc.*, 2004 WL 6034623, at *4 (D. Utah Mar. 24, 2004); *Beverly v. Interior Elec. Inc. Nev.*, 2023 WL 355692, at *3 (9th Cir. Jan. 23, 2023) (non-party); *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 2024 WL 3225909, at *3 (N.D. Cal. June 28, 2024); *Athletics Inv. Grp., LLC v. Schnitzer Steel Indus., Inc.*, 2024 WL 2191007, at *4 (N.D. Cal. May 14, 2024) (non-party); *In re FirstEnergy Corp. Secs. Litig.*, 2023 WL 7319413, at *2 (S.D. Ohio Nov. 6, 2023) (non-party), *withdrawn in unrelated part*, 2024 WL 1149873 (S.D. Ohio Mar. 12, 2024); *de Leon v. Clorox Co.*, 2020 WL 4584204, at *9 (N.D. Cal. Aug. 10, 2020); *Melikhov v. Drab*, 2019 WL 5176911, at *6 (M.D. Fla. July 1, 2019) (non-party); *Barker v. Insight Global, LLC*, 2019 WL 1974899, at *2 (N.D. Cal. May 3, 2019) (non-party); *Del Sol v. Whiting*, 2015 WL 12090268, at *1 (D. Ariz. Mar. 10, 2015) (non-party); *Wagner v. Mastiffs*, 2012 WL 5948325, at *2 (S.D. Ohio Nov. 28, 2012); *Edwards v. Dwyer*, 2012 WL 75335, at *2 (E.D. Mo. Jan. 10, 2012) (non-party); *Saewitz v. Lexington Ins. Co.*, 2006 WL 8433179, at *4 (S.D. Fla. Apr. 10, 2006).

than unverified and unsworn representations ….”); *Cont'l Cas. Co. v. Multiservice Corp.*, 2008 WL 73345, at *7 (D. Kan. Jan. 7, 2008) (“The court declines to simply rely on [] counsel's unsworn representations in the motion.”).

As to the names and IP addresses for users of Respondents' free or paid services to create Uber ride receipts, the Court should require Respondents to either: (1) produce these names and IP addresses or, in the alternative, (2) provide declarations attesting that they are not in possession, custody, or control of names or IP addresses for any users who have created Uber ride receipts (nor have they been in the past), explaining the steps taken to locate such names and IP addresses, and confirming that they have produced all available responsive information for each website, app, and service for all available time periods.

**B.      The Discovery Petitioners Seek is Reasonable in Scope.**

The discovery Petitioners seek from Respondents is reasonable in scope. Respondents contended in conferrals that the request for Stripe IDs for users of Respondents' paid services who created fraudulent Uber ride receipts is overbroad because Petitioners had not identified which specific users they believed used Respondents' services and submitted fraudulent Uber ride receipts in the MDL. *See* Exhibit G at 15 (Nov. 21, 2025). This makes no sense. The reason Petitioners are seeking Stripe IDs is to identify those users in order to determine which Plaintiffs created fraudulent ride receipts. If Petitioners could already identify those MDL Plaintiffs, they would not need the Stripe IDs.

Nor does Respondents' assertion that the request is overbroad because Petitioners have not, at the time, identified MDL Plaintiffs from the email addresses of paid users that created fraudulent

Uber ride receipts, hold any water. As Petitioners explained, individuals creating fraudulent ride receipts in order to submit them in litigation are highly unlikely to use the same email address to sign up for the service as the email used for their Uber account. *See id.* at 14 (Nov. 21, 2025). Petitioners are not seeking the Stripe IDs of every paid user of Respondents' services. They are seeking only the IDs of users who used Respondents' services to create Uber ride receipts.

As to the names and IP addresses of those who used Respondents' free and paid services to create fraudulent Uber ride receipts, Respondents have not at this point asserted that this request is overbroad. *See id.* at 12-13, 17-18 (Nov. 21, Dec. 8, 2025). Nor would such an objection hold any merit. Respondents were able to efficiently identify paid users who created fraudulent Uber ride receipts and export a list of email addresses associated with those users. If data relating to names and IP addresses exists, there is no apparent reason why Respondents could not similarly export and produce that data for all users who created fraudulent ride receipts with little difficulty.

### C. Respondents Have Not Articulated any Undue Burden from Complying with the Discovery Petitioners Seek.

Complying with the subpoenas would not be an undue burden on Respondents. The undue burden analysis requires courts to "balance the need for discovery against the burden imposed when parties are ordered to produce information or materials." *Masters*, 2009 WL 4016003, at *2.

As explained above, the documents requested are highly relevant and critical to uncover Plaintiffs in the MDL who have rested their claims on fraudulent ride receipts. Respondents uniquely possess information about the identities of those who used their services to create fraudulent Uber ride receipts. The time period in the amended subpoena is limited to documents "from January 1, 2018 to present." *See* Exhibit E.

Respondents have not explained in the conferrals why producing Stripe IDs would be any more time-consuming or costly than simply exporting that data. *See* Exhibit G at 2, 10-12, 15, 18 (Nov. 17, Nov. 21, Dec. 1, Dec. 8, 2025); Shortnacy Decl. ¶ 22. Instead, they put forward two reasons why they did not want to produce the Stripe IDs along with the other data they produced for paid users who created fraudulent Uber ride receipts.

First, they said that the Stripe IDs "are information created by another third party application when and if a user signs up for an account," and the IDs "do not belong to Express Digital Services," so they were "***uncertain*** as to whether the contract with Stripe or other legal issues preclude it from providing them." Exhibit G at 11 (Dec. 1, 2025) (emphasis added).

But "uncertain[ty]" about whether there are contractual restrictions on disclosing Stripe IDs is not sufficient when Respondents apparently have not actually bothered to check the contract. Even if the Stripe contract had a confidentiality clause prohibiting the disclosure of Stripe IDs (and Respondents only speculate that it might), such provisions routinely have exceptions allowing disclosure pursuant to subpoenas and other legal processes. *See, e.g. CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 2017 WL 9690400, at *2 (N.D. Iowa July 19, 2017) (ordering production, notwithstanding an "objection to producing the confidential settlement agreement … based on that agreement's confidentiality clause").

Further, any privacy objection is a red herring, as evidenced by Respondents' offer to provide a sample of Stripe IDs, *see* Exhibit G at 15 (Nov. 21, 2025); Shortnacy Decl. ¶ 23, and because the alphanumeric Stripe IDs do not disclose anyone's identity. Moreover, when it comes time for Stripe to provide the identities associated with these IDs, Stripe may do so pursuant to the

MDL court's Protective Order. In fact, the MDL court previously ordered Uber to disclose unique user IDs for hundreds of thousands of non-parties, including individuals who are allegedly survivors of incidents of sexual assault or misconduct. Uber MDL, Dkt. No. 2647 (Mar. 27, 2025) (ordering production while acknowledging the possibility that disclosure of the unique user IDs might reveal non-parties' identities). Respondents cannot expect to receive a different result for IDs associated with individuals who used their services to create non-bona fide Uber ride receipts. Further, Respondents have waived any privacy objections because they have already disclosed (without a confidentiality designation) email addresses for users who have created non-bona fide Uber ride receipts. *See* Exhibit G at 6, 10, 17 (Oct. 26, Dec. 1, Dec. 8, 2025); Shortnacy Decl. ¶¶ 18-19, 23. Additionally, Respondents notify their subscribers that they will disclose users' identifying information when "complying with legal process" and when "preventing fraud," which is precisely what the subpoena seeks here. *See* Terms and Conditions (Exhibit F).

Respondents later asserted in conferrals that production of Stripe IDs is "barred by the Stored Communications Act" (SCA). Exhibit G at 10 (Dec. 1, 2025). This assertion is misplaced for two reasons. First, the SCA does not apply to MakeReceipt, but rather applies only to "electronic communication services" (*e.g.*, AT&T, Gmail, Facebook Messenger) and "remote computing services" (*e.g.*, Dropbox, Google Drive, Microsoft 365). 18 U.S.C. § 2702(a)(1)-(2); *see* 18 U.S.C. § 2711(2) ("'remote computing service' means the provision to the public of computer storage or processing services by means of an electronic communication system"); 18 U.S.C. § 2510(15) ("'electronic communication service' means any service which provides to

users thereof the ability to send or receive wire or electronic communications") (definition incorporated into SCA by 18 U.S.C. § 2711(1)).

The SCA "is *not* meant to provide a 'catch-all … to protect the privacy of stored internet communications.'" *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 686 (N.D. Cal. Feb. 10, 2021) (emphasis in original); *see also, e.g.*, *Satcom Sol. & Res. LLC v. Pope*, 2020 WL 4511773, at *1, *7 (D. Colo. Apr. 20, 2020), *report and recommendation adopted*, 2020 WL 2188922 (D. Colo. May 6, 2020) (dismissing claim under SCA because "an online marketplace for commercial satellite communications equipment and services in Colorado" was not subject to SCA); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1023-24 (N.D. Cal. 2012) (noting that "the SCA has a narrow scope" and did not apply to LinkedIn in this case).

And even if Respondents were the type of provider covered by the SCA (which they are not), the SCA does not prevent disclosure of Stripe IDs, names, and IP addresses, but rather expressly allows disclosure of this non-content information. 18 U.S.C. § 2702(c)(6); *see also, e.g.*, *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (noting that the SCA "expressly allow[s]" "the disclosure of personally identifiable information," including "subscribers' names, addresses, telephone connection records, length of service, telephone numbers, subscriber numbers, credit card numbers, and bank account numbers"); *MG Premium Ltd. v. Does 1-20*, 2023 WL 4681379, at *3 (C.D. Cal. July 7, 2023) (compelling non-party to provide "all user information … including but not limited to all payment information, billing and credit card information, and login/logout IP address(es)"); *Bodyguard Prods., Inc. v. Doe 1*, 2018 WL 8489600, at *2 (D. Haw. Nov. 19, 2018) (rejecting "argu[ment] that the production of the requested information would

violate the Stored Communications Act … [because] the subpoenas here seek only subscriber information and do not seek the content of communications"); *Chevron Corp. v. Donzinger*, 2013 WL 4536808, at *6 (N.D. Cal. Aug. 22, 2013); *Obodai v. Indeed, Inc.*, 2013 WL 1191267, at *3-4 (N.D. Cal. Mar. 21, 2013); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011).

Lastly, the cost of compliance does not present an undue burden. As Petitioners have told Respondents throughout the conferrals, Petitioners are willing to pay for reasonable expenses for producing responsive documents if Respondents' compliance is satisfactory.[21] *See* Exhibit G at 3, 5, 12, 15, 20 (Oct. 30, Oct. 31, Nov. 10, Nov. 21, Dec. 8, 2025). Thus, any argument as to the costliness of Respondents' production is baseless. Cost allocation can be determined once Respondents have fully complied with the subpoena, through the parties' negotiations and, if necessary, by submitting the issue for adjudication by this Court or the MDL court.

### D. Respondents Failed to Timely Object to Petitioners' Subpoenas.

While there are ample reasons for the Court to compel Respondents to comply with the subpoena, as set out above, it can do so for the additional reason that Respondents never served written objections and did not raise objections in the conferrals within the time period set out in Rule 45.

As clearly set out in Rule 45(d)(2)(B), "[w]ritten objections [to a subpoena duces tecum] may be served by the non-party, but the objection must be served before the earlier of the time

---

[21] Petitioners do not believe that *reasonable* expenses include Respondents' expenses associated with their continued noncompliance and motion practice to enforce the subpoena, which would not be necessary if Respondents complied with the subpoena.

specified for compliance or 14 days after the subpoena is served." *Bennett v. Galer*, 2023 WL

7109620, at *1 (M.D. Fla. Oct. 27, 2023) (citing Fed. R. Civ. P. 45(d)(2)(B)). "If no timely written

objection is served, the person subject to the subpoena generally waives any objection to

production as commanded by the subpoena." *In re Subpoenas Duces Tecum Issued by U.S. Dist.*

*Ct. for Dist. of New Mexico*, 2006 WL 8443319, at *2 (D.N.M. Nov. 3, 2006); *see also Amica Mut.*

*Ins. Co. v. Whois Priv. Prot. Serv., Inc.*, 2012 WL 1657728, at *3 (D. Colo. May 11, 2012) ("Courts

generally have held that failure to object in writing to a subpoena duces tecum within the time

specified in this rule constitutes a waiver of objections."). "Waiver occurs whether the objections

are substantive or procedural in nature. Timely asserting one type of objection does not preserve

other types of objections under Rule 45(c)(2)(B)." *Copeland v. C.A.A.I.R., Inc.*, 2024 WL 841215,

at *4 (N.D. Okla. Feb. 28, 2024) (citations omitted); *Chevron Corp. v. Stratus Consulting, Inc*.,

2010 WL 2135217, at *3 (D. Colo. May 25, 2010) ("The Court agrees with Petitioner that the

[party's] tardiness in challenging the issuance of the subpoenas waives their present assertions of

privilege").[22] There is good reason why "Rule 45(c)(2)(B) []require[s] the recipient of a subpoena

---

[22] *See also, e.g.*, *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) ("We believe that Rule 45(c)(2)(B) does require the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a "game." … [W]e think it is clear that Rule 45 contemplates assertion of all objections to document production within 14 days …."); *Parker v. N. W.*, 2025 WL 565817, at *3 (E.D. Cal. Feb. 19, 2025) ("Failure to serve timely objections waives all grounds for objections."); *Bennett v. Galer*, 2023 WL 7109620, at *1 (M.D. Fla. Oct. 27, 2023); *Fit Tea LLC v. Alani Nutrition LLC*, 2023 WL 2351657, at *2 (M.D. Fla. Mar. 3, 2023); *Stephenson v. Taser Int'l, Inc*., 2023 WL 1816866, at *3 (M.D. Fla. Feb. 8, 2023); *Axon Enter. Inc. v. Venjuris PC*, 2023 WL 1796436, at *3 (M.D. Fla. Feb. 7, 2023); *Erickson v. Builder Advisor Grp. LLC*, 2022 WL 3109587, at *3 (N.D. Cal. July 6, 2022), rep. and rec. adopted, 2022 WL 3109563 (N.D. Cal. Aug. 4, 2022); *Schoonmaker v. City of Eureka*, 2018 WL 5829851, at *1 (N.D. Cal. Nov. 7, 2018); *Traut v. Quantum Servicing, LLC*, 2018 WL 1035134, at *6 (N.D. Tex. Feb. 23, 2018); *Nasufi v. King Cable, Inc*., 2017 WL 3334110, at *4 (N.D. Tex. Aug. 4, 2017); *Fed.*

---

to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'" *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) ("[W]e think it is clear that Rule 45 contemplates assertion of all objections to document production within 14 days ….").

Here, the initial subpoena to Express Digital Services, LLC was issued on September 23, but attempted service was unsuccessful on September 24 because the registered address was a private mailbox service, Pack & Ship. The amended subpoena to Express Digital Services, LLC was served to its counsel by consent on October 17—at Petitioners' counsel's request to add a time frame for the document requests and provide additional time to produce documents—with compliance due 14 days later on October 31, 2025. Respondents did not serve objections by the October 31 deadline. The subpoena to Shawn Graft was served on October 9, with compliance due 14 days later on October 23, 2025. Respondents did not serve objections by the October 23 deadline. *See* Shortnacy Decl. ¶¶ 5-7, 25-26.

The first communication by Respondents' counsel was on October 15, but the discussions with Respondents' counsel through October 31 were about *how* Respondents would comply with the subpoena, not *whether* they would comply. *See* Exhibit G at 4-9 (Oct. 15, Oct. 17, Oct. 20, Oct. 23, Oct. 26, Oct. 30, Oct. 31, 2025). Respondents made their limited production on October 26, and produced a corrected file on October 31—their only productions to date. *See* Shortnacy Decl. ¶¶ 16, 18, 26.

---

*Deposit Ins. Corp. v. Amos*, 2017 WL 11682626, at *2 (N.D. Fla. May 16, 2017); *Poturich v. Allstate Ins. Co.*, 2015 WL 12766048, at *2 (C.D. Cal. Aug. 11, 2015); *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002).

The first time Respondents' counsel offered any specific narrowing of the subpoena requests was on November 17 when they asked Petitioners to limit their request for Stripe IDs to specific identified individuals. *See* Exhibit G at 2. But even to date, Respondents still have not served any written objections to any of the subpoenas. *See* Shortnacy Decl. ¶ 26.

Respondents' "failure to object in writing to" Petitioners' "subpoena duces tecum within the time specified in" Rule 45(d)(2)(B), "constitutes a waiver of objections." *Amica Mut. Ins. Co.*, 2012 WL 1657728, at *3. Because any objections have been waived, the Court should order Respondents to comply in full.

<u>**CONCLUSION**</u>

For the reasons set forth above, Petitioners respectfully ask the Court to transfer this action to the U.S. District Court for the Northern District of California. In the alternative, Petitioners ask the Court to order Respondents to: (1) produce all Stripe IDs associated with all users who created an Uber ride receipt using one of Respondents' services, and (2) either produce all names and IP addresses associated with all users who created an Uber ride receipt using Respondents' services, or provide a declaration to Petitioners from each Respondent, stating under oath that they:

- do not store or maintain names of individuals that paid to use apps or services;

- do not store or maintain names of individuals that did not pay to use apps or services;

- do not not store or maintain IP addresses related to users who pay for apps or services;

- do not store or maintain IP addresses related to users who do not pay for apps or services;

- do not store or maintain IP addresses related to users who download the apps from the Apple Store or Google Play Store;

- do not have any way to connect User IDs that they store and maintain to IP addresses related to users;

- have produced all available information responsive to the Subpoena for each of the websites, apps, and services;

- do not store or maintain any of the information already provided for the users who paid to use apps or services, for the users who do not pay for services; and

- confirm that they have all produced all information within their possession, custody, or control that is responsive to the Subpoena for all available time and from all sources.

Dated: December 19, 2025

Respectfully submitted,

*/s/ Daniel E. Rohner*
Daniel E. Rohner, #27469
**SHOOK, HARDY & BACON L.L.P.**
1660 17th Street, Suite 450
Denver, CO 80202
Telephone: 303-285-5300
Facsimile: 303-285-5301
Email: drohner@shb.com

***Attorney for Petitioners Uber Technologies, Inc., Rasier LLC, and Rasier-CA, LLC's***