**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-mc-00121-NYW

UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,

     Petitioners-Issuing Parties,

v.

EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL SERVICES, LLC,

     Respondents-Subpoenaed Parties.

---

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO TRANSFER PROCEEDING TO ENFORCE SUBPOENAS DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA TO THE ISSUING COURT OR TO COMPEL COMPLIANCE WITH SUBPOENAS**

---

Respondents Express Digital Services, LLC ("EDS") and Shawn Graft ("Respondents")[1], non-parties to the underlying multidistrict litigation, respectfully submit the following brief in Response to the above-titled motion are responding only to the merits of the motion to compel compliance and not the transfer issue raised by Uber.

## I.    INTRODUCTION

EDS seeks the protection that Rule 45 was designed to provide for non-parties: protection from the undue burden and expense of continually expanding discovery

---

[1] Although Uber captioned this motion against "Express Digital Services and Shawn Graft d/b/a Express Digital Services," Uber agreed during the parties' October 16, 2025 meet-and-confer that the subpoena should be directed to Express Digital Services rather than Mr. Graft personally and subsequently served an amended subpoena addressed only to Express Digital Services. Twigger Dec. ¶ 7. Mr. Graft therefore is not a proper party to this motion.

1

demands. Uber served a subpoena on EDS, a Colorado non-party, seeking "contact information" for users who generated Uber receipt templates through EDS's platforms. EDS cooperated immediately, meeting and conferring with Uber regarding the structure of its systems and producing the responsive data within ten days of service of the subpoena.

After receiving that production, however, Uber concluded that the information EDS maintains was insufficient to identify individuals involved in the underlying multidistrict litigation. Rather than concluding its inquiry, Uber repeatedly expanded the scope of the information it sought from this non-party—first demanding Stripe transaction identifiers, then requesting IP address data that was not requested in the subpoena, and ultimately demanding that EDS provide a sworn declaration confirming the production and suggesting that Uber would seek deposition testimony from EDS's owner if such confirmation were not provided.

As a result of these escalating demands, EDS has been required to devote substantial time and resources responding to requests that extend beyond the scope of the subpoena and the information maintained by its systems. Rule 45 imposes an affirmative duty on the issuing party to avoid imposing undue burden or expense on non-parties and requires courts to protect subpoena recipients from significant compliance costs. Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii). This Court should enforce those protections by confirming that EDS has satisfied its obligations under the subpoena and by directing Uber to reimburse EDS for the costs incurred responding to Uber's expanding requests.

The issue before this Court is a narrow one. It is not whether fraud occurred in the MDL litigation or whether any receipt in that litigation was generated using EDS's services. It is whether EDS—after producing the "contact information" requested by the subpoena—must continue responding to new demands for additional technical data fields that were not requested in the subpoena, while incurring the significant costs associated with those expanding requests. EDS respectfully seeks a ruling confirming that it has complied with its obligations under Rule 45 so that this non-party discovery dispute may be brought to a close and the issue of EDS's compliance costs may be addressed.

## II.    FACTS

EDS is a Colorado business owned and operated by Shawn Graft. Graft Dec. ¶ 1. EDS operates several online platforms, including MakeReceipt.com and related services, that allow users to generate receipts from templates. Id. ¶ 2. Mr. Graft originally developed the receipt generator after losing a receipt needed for an expense report and recognizing that businesses and individuals often need replacement or sample receipts for legitimate recordkeeping purposes. Id. ¶ 3.

**Receipt Generation Platforms and MakeReceipt.com**

Receipt generation platforms such as those operated by EDS serve a variety of legitimate business and technological purposes. EDS's platforms are used by thousands of small businesses to generate receipts for products and services, including mobile service providers and small vendors that require simple tools to document transactions. Id. ¶ 4. In recent years, customers have also contracted with EDS to

3

create synthetic receipt datasets used by universities, start-ups, and established companies to train machine learning systems and improve expense-processing workflows. Id. In fact, in 2017 Uber itself contracted with EDS to create a dataset of one million synthetic receipts used to improve optical character recognition and data extraction technologies. Id. ¶ 5.

Over the past five years numerous other receipt-generation platforms have entered the market and operate using similar models that allow users to generate receipts from templates and remove watermarks through paid subscriptions. Id. ¶ 6. Several competing services—including needreceipt.com, createreceipt.com, receiptfaker.com, and receiptmake.com—offer Uber receipt templates among the many formats available to users. Id. Advances in artificial intelligence have also accelerated the development of platforms capable of generating photo-realistic receipts using AI technologies. Id.

Users may generate receipts through either free access or paid subscriptions. For users who generate receipts without creating a paid account, the platforms do not collect identifying information because no login is required. Id. ¶ 8. For paid accounts, the platforms maintain limited information associated with transactions, including the email address associated with the subscription, certain technical data relating to the receipt generation request, the template used, the date and time of the request, and the IP address transmitting the request. Id. ¶ 14. The platforms do not require users to provide names, physical addresses, or telephone numbers. Id. ¶ 13.

4

Payment processing for paid accounts is handled through Stripe, a third-party payment processor. Id. ¶ 17. When a user completes a payment transaction, Stripe generates a transaction identifier associated with that payment, known as a Stripe ID. Id. ¶ 18. That identifier is an internal reference number used within Stripe's payment processing system. Id. ¶ 19. The only identifying information transmitted from EDS to Stripe during the payment process is the email address associated with the user account. Id. ¶ 21.

**Uber's Identification of EDS**

Uber began investigating whether receipt-generation platforms had been used by plaintiffs in the underlying MDL litigation after questions arose regarding the authenticity of certain ride receipts submitted by plaintiffs. In August 2025, Uber served a subpoena on Cloudflare, a domain name service provider used by EDS, seeking to identify the entity operating the MakeReceipt.com and ExpressExpense.com platforms. Id. ¶ 30.

On October 8, 2025, a private investigator retained by Uber appeared at Mr. Graft's personal residence and informed him that Uber needed information about the MakeReceipt platform in connection with the MDL litigation. Id. ¶¶ 33–34. The investigator asked questions regarding what data the platform retained and indicated that a subpoena would be served to obtain the requested information. Id. ¶ 36. Later that same day the investigator sent Mr. Graft a draft subpoena and relayed a message from Uber's counsel stating that Uber would reimburse reasonable costs associated with compliance. Id. ¶ 38. Mr. Graft subsequently retained counsel and directed Uber to serve the subpoena on EDS rather than him personally. Id. ¶ 40.

**EDS's Response to the Subpoena**

After Mr. Graft retained counsel, the parties began meeting and conferring regarding the scope of Uber's subpoena and the information maintained by EDS's systems. Twigger Dec. ¶ 5. During the initial meet-and-confer on October 16, 2025, EDS explained the structure of its platforms and the limited data retained by its systems, including that the platforms do not store names of users and retain only email addresses associated with paid accounts, along with certain technical data relating to receipt generation requests. Id. ¶ 9. EDS also explained that it does not retain copies of generated receipts older than fourteen days and therefore had no data responsive to Requests 3 and 4 of the subpoena. Id.

Based on that discussion, Uber confirmed that its objective was to compare EDS's data against the database of plaintiffs in the MDL to determine whether any plaintiffs had generated Uber receipts using the services. Id. ¶ 10. Uber requested that EDS provide available email addresses, transaction timestamps, and the script used to generate receipts for transactions involving Uber receipt templates. Id. Uber did not request Stripe identifiers or IP address data during that discussion. Id. ¶ 11.

Uber served the subpoena on October 17, 2025. Id. ¶ 12. EDS worked promptly to respond and produced native spreadsheets containing the requested data on October 26, 2025—ten days after service. Id. ¶ 13. That production included the identifying contact information maintained by the platforms for those transactions. Id.

The parties continued to meet and confer while Uber reviewed the production. During a call on November 6, 2025, Uber raised concerns that the email addresses

provided did not allow it to identify individuals in the MDL and requested additional information that might allow identification through other means. Id. ¶ 15. Uber requested that EDS provide Stripe identifiers associated with the transactions so that Uber could attempt to obtain additional information from Stripe. Id. EDS explained that the only identifying information transmitted to Stripe during payment processing is the same email address information already produced and that Stripe identifiers are internal payment processor reference numbers that do not identify a user. Id. EDS nevertheless offered to provide Stripe IDs for transactions in which email addresses matched individuals in Uber's database of plaintiffs. Id.

During a further meet-and-confer on November 21, 2025, Uber again pressed for production of Stripe identifiers for all transactions and, for the first time, requested that EDS produce IP address data associated with the transactions. Id. ¶¶ 18–20. During that discussion Uber acknowledged that its comparison of the email addresses produced by EDS against information available in the MDL had not identified any matching individuals. Id. ¶ 24.

Uber then requested that Mr. Graft provide a sworn declaration verifying that the production was complete and suggested that Uber might seek deposition testimony if such confirmation was not provided. Id. ¶ 21. When asked to provide authority requiring a non-party to submit such a declaration in response to a Rule 45 subpoena, Uber did not identify any rule or case law supporting that request. Id.

Throughout these discussions EDS repeatedly raised the costs associated with compliance with the subpoena. Id. ¶¶ 8, 15, 26. Uber had previously represented that it

7

would reimburse reasonable costs incurred in responding to the subpoena. Id. ¶ 25. As the meet-and-confer process continued and Uber's requests expanded beyond the information sought in the subpoena, the costs associated with responding to those requests continued to increase. Id. ¶ 26.

EDS produced the identifying contact information maintained by its systems within ten days of service of the subpoena and repeatedly explained the limits of the data retained by its platforms. Id. ¶¶ 9, 13, 15. Over the following weeks Uber's requests expanded to include demands for Stripe transaction identifiers, IP address data, and a sworn declaration verifying the production, along with suggestions that Uber might seek deposition testimony. Id. ¶¶ 18–21. At no point during those discussions did Uber identify a clear point at which it would consider EDS to have satisfied its obligations under the subpoena. Id.

Uber nevertheless initiated enforcement proceedings, including the present motion and a related tag-along filing before the Judicial Panel on Multidistrict Litigation, increasing the costs incurred by this Colorado non-party in responding to a subpoena directed to a narrow category of information. Id. ¶¶ 29–30.

Despite Uber's extensive investigation into receipt-generation platforms, Uber has never provided EDS with any evidence that a receipt submitted in the MDL litigation was generated using EDS's services. Id. ¶ 28. Nor has Uber identified any MDL plaintiff whose information matched the email addresses produced by EDS. Id. ¶ 24. Public filings in the MDL further reflect that Uber has successfully had at least 21 of the alleged claims initially identified as involving allegedly fraudulent receipts dismissed by the MDL

court with more motions pending.[2] Against that backdrop, Uber nevertheless seeks additional technical data and a sworn declaration from this non-party regarding systems whose operation is readily observable through the platforms themselves and which EDS has already explained in detail during the parties' meet-and-confer discussions and through the declarations submitted in connection with this motion.

## III.    ARGUMENT

**EDS Fully Complied with Uber's Subpoena by Producing the Contact Information It Maintains**

This motion concerns a narrow Rule 45 issue: whether a non-party that promptly produced the contact information requested in a subpoena must continue responding to expanding demands for additional technical data fields that were not requested in the subpoena. Rule 45 protects non-parties from such open-ended discovery by requiring courts to prevent undue burden and to protect subpoena recipients from significant expense. The subpoena issued to EDS requested documents identifying "contact information" for users who generated Uber receipt templates through EDS's services. Twigger Dec. ¶¶ 9. EDS produced the identifying contact information it maintains for those users. Id.¶13.

Uber nevertheless seeks to compel the production of additional technical data fields, including Stripe transaction identifiers and IP address data, that are not "contact information" and were not requested in the subpoena. Rule 45 does not authorize such expanded discovery from a non-party after the subpoena has been satisfied. To the

---

[2] See *In re: Uber Techs., Inc. Passenger Sexual Assault Litig.*, N.D. Cal. Case No.3:23-3084-CRB, MDL No. 3084, Dkt. 3604, Dkt. 3784, Dkt. 4137, and Dkt. 4933.

contrary, the rule imposes an affirmative obligation on the party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court must enforce that duty. Fed. R. Civ. P. 45(d)(1). When a court orders compliance from a non-party, it must also "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). The Tenth Circuit has emphasized that these protections are mandatory and must be applied when evaluating discovery directed at non-parties. See *Rhea v. Apache Corp.*, 833 F. App'x 771, 782–83 (10th Cir. 2020) (vacating order compelling non-party production where the district court failed to adequately protect the non-party from significant expense under Rule 45(d)(2)(B)(ii)). Uber's effort to compel additional technical identifiers therefore falls outside the scope of the subpoena and the protections afforded to non-parties under Rule 45. Absent a ruling defining the limits of the subpoena, a non-party would have no clear point at which its compliance obligations end.

A.     Stripe Transaction Identifiers Are Not "Contact Information"

The subpoena served on EDS requested documents identifying "contact information" for individuals who generated Uber receipt templates through EDS's services. Twigger Dec. ¶¶ 9, 13. EDS produced the identifying contact information it maintains for those transactions, including the email addresses associated with user accounts. Graft Dec. ¶ 41.

Uber now seeks to compel production of Stripe transaction identifiers associated with those transactions. A Stripe identifier, however, is not contact information. It is an

internal reference number generated by Stripe's payment processing system that identifies a transaction within Stripe's internal records. Graft Dec. ¶ 19. The identifier does not contain or reveal a user's name, email address, phone number, mailing address, or any other information that would allow the individual associated with the transaction to be contacted. Id. Nor can EDS use a Stripe identifier to determine the identity of a user.

As explained in the Graft Declaration, the only information transmitted by EDS to Stripe in connection with a transaction is the same email address information that EDS has already produced in response to the subpoena. Graft Dec. ¶ 21. EDS does not maintain customer names or other identifying information associated with those transactions beyond the email addresses already provided. Id. Thus, the Stripe identifier itself does not identify any individual user and does not provide contact information beyond what Uber already possesses.

Uber was aware from the outset of the parties' discussions that EDS's systems generate Stripe transaction identifiers and capture other technical data fields. Twigger Dec. ¶ 9; Graft Dec. ¶ 18. The subpoena nevertheless requested only "contact information," and Uber did not initially request production of Stripe identifiers during the parties' early meet-and-confer discussions. Id.

Uber now seeks those identifiers because they may allow Uber to pursue additional information from Stripe regarding transactions maintained in Stripe's own systems. But any such information is maintained by Stripe, not EDS. Rule 45 does not

require a non-party to produce internal technical identifiers so that Uber may pursue additional information from Stripe that is maintained in Stripe's own systems.

Because Stripe transaction identifiers do not constitute "contact information" and do not identify any individual user, they fall outside the scope of the subpoena served on EDS.

B. IP Addresses Are Not "Contact Information" and Were Not Requested in the Subpoena

Uber also seeks to compel production of IP address data associated with receipt generation activity on EDS's platforms. As with Stripe identifiers, IP address data does not constitute "contact information" within the meaning of the subpoena.

An IP address is a technical identifier associated with an internet connection or device. It does not identify a specific individual user and does not provide information that would allow that individual to be contacted. Courts have repeatedly recognized that an IP address identifies an internet connection rather than the person using it. *See Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1144–45 (9th Cir. 2018) (" Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle."); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) (observing that the assumption that the subscriber associated with an IP address is the individual who engaged in the alleged conduct is "tenuous"). For that reason, an IP address does not constitute "contact information" that would allow the user associated with the receipt generation activity to be contacted. The subpoena served on EDS requested only

12

documents identifying "contact information" for users of the Services. Twigger Dec. ¶¶ 9, 13. It did not request IP address data.

Uber was aware during the parties' early discussions that EDS's systems capture certain technical data fields, including IP address information. Twigger Dec. ¶ 9; Graft Dec. ¶ 8. Uber nevertheless chose to seek only "contact information" in its subpoena and did not request production of IP address data until later in the parties' meet-and-confer process. Because IP address data does not constitute "contact information" and was not requested in the subpoena, Uber's request to compel production of that data likewise falls outside the scope of the subpoena served on EDS.

C. <u>Rule 45 Does Not Require a Non-Party to Provide a Sworn Declaration Confirming the Completeness of Its Production</u>

After EDS produced the contact information requested in the subpoena and explained the limits of the information maintained by its systems, Uber demanded that EDS provide a sworn declaration confirming that the information produced was complete. Twigger Dec. ¶ 21. The subpoena itself did not request such a declaration.

Rule 45 requires a subpoena recipient to produce documents within the scope of the subpoena. It does not require a non-party to submit sworn testimony regarding the completeness of its production absent a court order. EDS nevertheless explained through counsel, and through the technical information provided by Mr. Graft, the nature of the data maintained by its systems and the limits of the information available for production. Twigger Dec. ¶ 9; Graft Dec. ¶ 8.

Uber's demand for a declaration illustrates the broader problem presented by this motion. After EDS completed its production, Uber raised additional requests that had

13

not been included in the subpoena, including requests for Stripe transaction identifiers and IP address data, along with the demand for a sworn declaration confirming the production. Twigger Dec. ¶¶ 20–21.  During this same period, EDS repeatedly advised Uber that the costs associated with responding to the subpoena were increasing as Uber's requests expanded. Id. ¶¶ 8, 15, 26. Uber had previously represented that it would reimburse reasonable costs associated with compliance. Id. ¶ 25. The parties were ultimately unable to resolve the dispute, and Uber initiated enforcement proceedings in this Court and filed a related tag-along notice before the Judicial Panel on Multidistrict Litigation. Id. ¶¶ 29–30. As a result, EDS has been required to participate in motion practice both in this Court and before the JPML regarding a subpoena directed to a narrow category of information maintained by a Colorado non-party.

Rule 45 does not require a non-party to respond to successive new requests beyond the scope of the subpoena once the subpoena as issued has been satisfied. EDS therefore respectfully requests that the Court confirm that it has complied with the subpoena as served, or alternatively define the limited additional production required so that this non-party's obligations under Rule 45 may be brought to a close.

## IV.    CONCLUSION AND REQUESTED RELIEF

EDS has produced the contact information requested in Uber's subpoena and has explained the limits of the information maintained by its systems. Uber nevertheless seeks to compel production of additional technical identifiers and a sworn declaration that were not requested in the subpoena.

At no point during the parties' extensive meet-and-confer discussions did Uber identify a clear endpoint at which it would consider EDS to have satisfied its obligations under the subpoena with an agreement to cover EDS's costs. Instead, after EDS completed its production, Uber raised successive additional requests—including Stripe transaction identifiers, IP address data, a sworn declaration regarding the completeness of EDS's production, and a potential deposition. Rule 45 requires courts to protect non-parties from undue burden and significant expense and to define the limits of non-party discovery. Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii). EDS therefore respectfully requests that the Court:

1. Confirm that EDS has complied with the subpoena as served;

2. Alternatively, define the limited additional production required so that EDS's obligations under the subpoena may be brought to a close; and

3. Order that EDS be protected from significant expense resulting from compliance, including by permitting EDS to seek recovery of its reasonable costs and attorneys' fees incurred in responding to the subpoena and this motion.

Respectfully submitted this 11th day of March 2026.

*/s/ Kelly H. Twigger*

Kelly H. Twigger
ESI Attorneys LLC
2945 Juilliard Street
Boulder, CO 80305
720-370-0435
ktwigger@esiattorneys.com
*Counsel for Respondent*

15

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-mc-00121-NYW

UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,

     Petitioners-Issuing Parties,

v.

EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL SERVICES, LLC,

     Respondents-Subpoenaed Parties.

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on this 11th day of March, 2026, I electronically filed Respondents' Opposition to Petitioners' Motion to Transfer Proceeding toEnforce Subpoenas Duces Tecum Issued by the U.S. District Court for the Northern District of California to the Issuing Court or to Compel Compliance With Subpoenas, Declaration of Kelly Twigger, and Declaration of Shawn Graft using the CM/ECF system which will send notification of such filing to the following email addresses:

           Daniel Edward Rohner
           Shook Hardy & Bacon LLP
           1660 17th Street, Suite 450
           Denver, CO 80202
           Email: drohner@shb.com

           *s/Kelly H. Twigger*

           Kelly H. Twigger

1

ESI Attorneys LLC
2945 Juilliard Street
Boulder, CO 80305
720-370-0435
ktwigger@esiattorneys.com
*Counsel for Respondents*

## CERTIFICATION PURSUANT TO DECEMBER 1, 2025 STANDING ORDER

The undersigned counsel certifies that generative artificial intelligence—specifically, ChatGPT—was used to draft this filing.  I further certify that Express Digital Services and Shawn Graft d/b/a Express Digital Services were advised of and consented to such use.  All cited authority was manually reviewed by counsel of record.


*/s/ Kelly H. Twigger*
Kelly H. Twigger
ESI Attorneys LLC
2945 Juilliard Street
Boulder, CO 80305
720-370-0435
ktwigger@esiattorneys.com
*Counsel for Respondents*

1