**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**


Civil Action No. 25-mc-00121-NYW

UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC,

Petitioners-Issuing Parties,

v.

EXPRESS DIGITAL SERVICES, LLC AND SHAWN GRAFT D/B/A EXPRESS DIGITAL
SERVICES, LLC,

Respondents-Subpoenaed Parties.

---

**DECLARATION OF SHAWN GRAFT**

---

I, Shawn Graft, declare as follows:

1.      I am the Sole Proprietor and Owner of Express Digital Services LLC

("EDS") , a Limited Liability Company based in Colorado.

2.      EDS owns and operates separate receipt generating platforms (the

"Services"):  MakeReceipt.com, ExpenseFast.com, InvoiceWriter.com,

ExpressExpense, DocDesk.co. and PDFPro.us.

3.      Back in April 2014, I was compiling receipts for submitting an expense

report and could not find a receipt. As a result, I was unable to submit the expense

1

report because of the loss of documentation. Although I had the credit card statement showing the receipt, company policy and my manager required the receipt for reimbursement and I had lost it. With no reliable way to replace the lost receipt, I used my skills as a developer to build an online receipt generator. It was built to solve the business problem of creating receipts for small businesses or replacing lost receipts. The growth of the ExpressExpense website allowed the other websites to be launched to provide additional technological advancements for those seeking to create receipts online. In 2018, EDS began offering synthetic receipt datasets for companies like Intuit, Canon, and Workday; those companies used those datasets to train their early machine learning models for digesting receipts from employees and customers.

4.    EDS's Services are used by thousands of small businesses to generate receipts for products and services. Mobile auto detailers, lawncare companies, painting contractors, flea-market vendors, for example, all rely on being able to generate receipts using our software. Since 2022, there has been a very strong interest in our systems for creating training data for AI and machine learning systems. Universities, start-ups and established companies use our systems to analyze and generate receipts to create better workflow for expense, tax and other business purposes.

5.    In 2017, Uber hired EDS to create a dataset of 1 million synthetic receipts including travel, restaurant, and expense receipts. These datasets were used for

2

improving OCR (Optical Character Recognition), data extraction, and image labeling/

classification for EDS.

6.      In the last 5 years many other receipt generators have come to market.

These online receipt generators operate in the same model as MakeReceipt and other

services. Customers can create customized receipts from templates and remove

watermarks by becoming a paid member. Many of these other services also provide

Uber receipts among their inventory of receipt generators / templates available for

customers. The table below lists a few examples of other online receipt generators not

owned by EDS and whether they offer Uber templates for generating receipts:

| Website / App | Founded | Offers Uber Receipts |
|---|---|---|
| needreceipt.com | 2017 | YES |
| createreceipt.com | 2024 | YES |
| receiptfaker.com | 2025 | YES |
| receiptmake.com | 2025 | YES |

Within the last 12 months, AI technologies have begun to proliferate the internet in the

receipt generation space — reeaiden.com and paperplugg.com are examples of

platforms that are using AI to generate photo-realistic receipts using AI.

**User Account Information Stored by the Platform**

7.      Each of the platforms from EDS follow the same model. For example,

Makereceipt.com is a subscription based SaaS tool that offers both free access and

paid accounts. A user can go to the website and create a receipt using any of the more

than 1000 pre-existing templates for free without creating an account. When a user

3

creates a receipt for free, that receipt can be immediately downloaded to their device and contains a watermark that may say "Become a member to remove watermark" or "For pro or enterprise members only" or "expensefast". Users must sign up for a paid account to remove the watermark.

8.      Receipts created using the free version of the Services do not require a user account or login. Because users do not create accounts to generate receipts on the free plan, the Services do not collect or maintain any identifying or contact information for those users. Specifically, the Services do not collect first or last names, email addresses, IP addresses, or any other identifying information when a user generates a receipt through the free version of the platform.

While the database architecture for the Services has evolved over time due to storage capacity considerations, receipts generated through the free plan are identifiable only by the presence of a watermark on the generated receipt image. The system does not associate those receipts with any user identity or contact information.

9.      When a user creates a paid account on each of the Services, the user selects a paid plan and is taken to a screen like the one below from Makereceipt.com:



10.     Once the user selects the paid plan they want, they are taken to a page with a Stripe plugin as depicted in the image below:



11.     The user inputs their email address and password into the plugin to create the account. When the user clicks enter, the following screen comes up. If as below, the user has information pre-saved, it allows them to choose their payment method, or they

5

can input a new credit card and click Update Payment Method:



12.     Once the user clicks through this screen and confirms payment, the email address and credit card information are transmitted to Stripe.

13.     The user's email address that they used to create the account is stored in the database for the Service with the specific transaction. The platform does not require users to provide any other identifying information including:  first or last name, physical address, or a phone number. Anyone walking through the steps of each Service can verify that no other identifying information is collected without having to set up a paid account.

14.     For users who create paid accounts, the database for the platform on which they create the receipt (MakeReceipt.com, etc.) stores the email address, the script used to create the receipt, the IP address from which the communication was made to the service, and the date and time of the request.

15.     Each of the other Services operates substantially the same as Makereceipt.com.

16.     The retained data for paid accounts from each Service differs due to server capacity and data retention policies.

| Website / Service | No records are available prior to |
|---|---|
| MakeReceipt.com | 2023-03-13 |
| ExpressExpense.com | 2016-02-26 |
| InvoiceWriter.com | 2019-03-13 |
| ExpenseFAST.com | 2020-01-08 |
| DocDesk.co | 2023-12-16 |
| PDFPro.us | 2023-03-06 |

**Payment Processing Through Stripe**

17.     For paid accounts, payment processing is handled by Stripe, Inc., the world's largest independent third-party payment processor. Companies often use third-party payment processors such as Stripe to securely handle credit card transactions. When a customer enters payment information on a website that uses Stripe, the card data is transmitted directly to Stripe's secure servers, rather than to the company operating the website. Stripe processes the transaction and returns a confirmation or transaction token to the business without providing the underlying credit card number. As a result, the business does not store or maintain customers' payment card information on its own servers. This structure helps businesses comply with Payment Card Industry Data Security Standard (PCI-DSS) requirements by relying on Stripe's secure infrastructure to handle sensitive payment data.

7

18.     When a user clicks to create a paid account, they view a screen with a window that requires their email address and credit card information. When a payment is processed, Stripe generates a Stripe identifier ("Stripe ID") associated with the payment transaction. That Stripe ID is then submitted to the platform (e.g. Makereceipt.com) and stored as part of the record for that transaction.

19.     A Stripe ID is an internal reference number used within Stripe's payment processing system.

20.     The Stripe ID that Express Digital Services has does not identify a person, does not contain personal identifying information, and cannot be used to contact a person.

**Information Provided to Stripe**

21.     The only information that the Services provide to Stripe during payment processing is the email address associated with the account.

22.     EDS does not transmit additional identifying information to Stripe beyond the email address already produced in response to the subpoena.

**Information Stored by EDS Regarding Stripe Transactions**

23.     EDS stores the Stripe ID associated with the transaction as a reference to the Stripe payment record.

24.     The Stripe ID itself does not reveal the identity of the user.

8

25.     Any identifying information associated with the payment transaction is maintained by Stripe, not EDS.

**IP Address Logs**

26.     Like most web platforms, the system may log IP addresses associated with certain user interactions.

27.      An IP address is a technical network identifier assigned to an internet connection at a particular time; it identifies the connection used to access a service, not the specific individual operating a device.

28.     Internet connections are frequently shared by multiple users, including members of a household, coworkers within an organization, guests on a network, or other individuals accessing a shared or unsecured Wi-Fi connection.

29.     Accordingly, the presence of a particular IP address in a system log does not establish the identity of the individual who performed a specific online action.

**Subpoena to Cloudflare to Identify Express Digital Services**

30.     On August 15, 2025, I received notice from Cloudflare's legal department that it had received a legal request to identify the company that owned Makereceipt.com and Expressexpense.com. Cloudflare is a leading Domain Name Server ("DNS") provider, and provides DNS services for Express Digital Services. Attached as Exhibit A is a true and correct copy of the Notice of Issuing of Subpoena from Uber in the MDL to Cloudflare and the legal notice received via email.

31.     Language of Cloudflare notice:

We received the attached legal request regarding the following domains managed through your Cloudflare account: makereceipt.com, expressexpense.com.

The legal request requires us to provide information in our systems related to these websites. We have determined that this is a valid request, and we are required to provide the requested information. In accordance with our Privacy Policy, we are informing you before we provide any of the requested subscriber information.

We plan to turn over documents in response to the legal request unless you intervene in the case within one (1) week of the date of this notice. If you plan to intervene in this process, we would suggest that you contact local counsel at your earliest convenience. Please know that removing or deleting content will not halt this process.

32.     I elected not to challenge the release of the information via Cloudflare.

**Subpoena from Uber to Express Digital Services**

33.     On Wednesday, October 8, 2025, I arrived home at my personal residence to find a man approaching me as I was getting out of my vehicle. He immediately introduced himself as a Private Investigator named Blake Schnitker. He informed me that I was being contacted because of the Uber Sexual Assault Lawsuit MDL. This conversation was held in front of my home and I was very surprised that this investigator would speak about this case in the street in front of my home. He didn't offer to go somewhere more private.

34.     Mr. Schnitker asked if I operated MakeReceipt.com and told me that I "wasn't in any trouble — Uber just needs some data from me right away." He told me that Uber's attorneys had hired him to locate me and asked if I would be willing to provide data to Uber to help identify people who used MakeReceipt.com to generate

10

fake receipts for Uber rides that are now claiming sexual assault. I told him I would be happy to help but that I would contact him later because I had guests arriving at my home. Mr. Schnitker handed me his business card and said to call him immediately when I was available.

35.     I phoned Mr. Schnitker that afternoon, October 8, 2025 at 5:50 pm and spoke with him for 11 minutes. I told him that I would work on retaining an attorney specifically for this request. He asked for specifics about what kind of data MakeReceipt.com retains on its customers. I told him we do store customer information and likely have some information that may be useful like email addresses, the API request information and time/date stamps for transactions. I told him that we do not maintain images of created receipts.

36.     Mr. Schnitker called me the very next day, on October 9, 2025, in the morning. I returned his call at 8:16am. He wanted specifics of what data MakeReceipt captured and if it included specific receipt details like exactly what receipts each user had created. He questioned how quickly I'd be able to produce the data and told me he would be serving a subpoena to get this data and follow proper process. The call lasted 19 minutes.

37.     Mr. Schnitker called again that same day, less than two hours later at 9:56 am. I told him I was retaining an attorney but I was traveling for the next few days and it might take longer to find an attorney than expected. I told him I would reach out to him

after the weekend and give him a status update. I told Mr. Schnitker this Rule 45 request will take a significant amount of my time and attorney time to complete and requested that he discuss covering our costs with his client. This call lasted 7 minutes.

38.     Later that day, Mr. Schnitker emailed me at 5:54 pm and included a copy of the subpoena that they intended to serve. He included a note from his client, Uber's Counsel of Record, Michael Shortnacy, Esq. of  Shook, Hardy & Bacon. That note said:

> You may tell Mr. Graft that we will agree to reimbursement of reasonable costs incurred complying with the subpoena.
> However, we ask that once he is served with the subpoena his attorney is the one that responds in writing with a request pursuant to the Federal Rules of Civil Procedure.

39.     I emailed Mr. Schnitker on Tuesday, October 14, 2025, at 9:24 am and told him we were still working on identifying proper counsel for this Rule 45 request.

40.     Mr. Schnitker called the next day, on October 15, 2025, at 9:20 am. I returned his call at 9:37 am. I informed him that I had retained ESI Attorneys LLC and Kelly Twigger, Esq. as counsel, and provided her information to him for service of the subpoena. I told him that the subpoena draft that was sent to me was in my personal name and it should be to my company, Express Digital Services. He agreed to change the subpoena to the business name instead and said he was the one who decided it would be in my personal name and not the company and it would be changed. The call lasted 15 minutes.

12

**Process to Identify and Produce Data in Response to Subpoena**

41.    In response to the subpoena, the company produced five native spreadsheets of responsive data from the Services containing more than 34,000 transactions with email addresses associated with user accounts that generated Uber ride receipts during the relevant time period.

42.    Those email addresses represent the only identifying contact information maintained by the Services for those accounts.

43.    The process to extract additional data fields is not a simple export as Uber suggests. Because each website runs on its own server and database, the reporting can't be pulled from one central place. A "single" report request is really five separate data pulls plus consolidation and validation. In practice, this is why it can take several hours, especially for these complex, high-volume queries. For each website/server, the workflow includes the following steps:

- Extract data from the production database (often in chunks to avoid impacting live site performance).

- Transfer and import the export into the analysis environment.

- Normalize and clean the data (standardize IDs, dates/time zones, naming, and formats so the sites can be compared).

- Transform and join tables to support cross-site analysis (mapping keys, building helper tables, indexing).

13

- Run reporting queries and generate the requested outputs.

- Validate results (sanity checks and spot checks to ensure totals match source systems).

- Export deliverables to the final file format.

- Upload and share via cloud storage.

44.    Following the initial meet and confer with Uber on October 16, 2025, I ran the above workflow to identify the individual transactions for users that had created receipts using the Uber template for each Service on the data available. Per Uber's request, I identified approximately 34,000 transactions and created a spreadsheet for each Service that included the date and time of the transaction, the email address and the script for the API call.

45.    To go back and pull the additional Stripe ID and IP address fields for all 34,000 transactions would require running this workflow again and would take several hours to complete, verify and provide the data.

**Matching Process Offered to Uber**

46.    After producing the dataset of email addresses, EDS offered to provide Stripe identifiers for any accounts whose email addresses matched individuals in Uber's own database.

47.    Uber conducted that comparison and reported that no matches were found.

48.    As a result, there were no accounts for which Stripe identifiers corresponded to individuals identified by Uber as relevant.

**Review of Alleged Receipts Created by Makereceipt.com**

49.    Despite multiple requests from Counsel, Uber has not provided any of the alleged receipts that it claims were created using the Services, so I have not seen or had an opportunity to examine a physical or digital file.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 11th day of March, 2026.

*/s/ Shawn Graft*
Shawn Graft

15